## Beatty *versus* Gilmore.

1. In an action on the case to recover damages for an injury sustained by plaintiff from his falling into an area-way, or passage dug in the pavement, leading into the cellar of defendant's house, erected on a public street in Harrisburg, and through the culpable neglect of the defendant left exposed, by which the plaintiff's leg was broken, it was *held*, that if by ordinary or reasonable care on the part of the plaintiff, he might have avoided the injury, he was not entitled to recover; otherwise he was entitled to recover.

2. What shall be deemed ordinary care must depend on the circumstances of each case, of which the jury is to judge; and if there be no facts proved from which a deduction can be drawn, the presumption is against the defendant whose misconduct rendered the accident possible.

3. In such a case it is not incumbent on the plaintiff to prove the exercise by him of ordinary care to avoid the injury, but the proof of the want of it on the part of the plaintiff lies on the defendant. He who avers a fact in excuse of his own misfeasance, must prove it.

4. It was competent to prove by a witness who examined the place where the accident occurred, but who was not present *when* it occurred, that in his opinion the place was dangerous.

5. It was not error for the court to term a dangerous opening in a much frequented street, in a large town, a public nuisance.

ERROR to the Common Pleas of *Dauphin county.*

This was an action on the case wherein James A. Gilmore was plaintiff, and George Beatty was defendant, to recover damages for an injury sustained by the plaintiff from his falling into an area-way, or passage into the cellar of a house of the defendant, by which the plaintiff's leg was broken. The house referred to was a three-story brick house on Market street, in the borough of Harrisburg, the building of which was commenced in May 1849, and though the upper part of it was occupied in November 1849, the basement story was not entirely finished on the 3d of January 1850, when the accident complained of occurred. The basement room was intended for an oyster-cellar, and the area-way into which the plaintiff fell, led down into it from the street. It was not denied that the plaintiff's leg was broken by his falling into this opening, and it was contended for him that it was occasioned or arose from the negligence of the defendant, whilst the defendant alleged that the accident arose from the recklessness of the plaintiff, and his want of reasonable and proper caution. The accident happened in the night.

On the trial, after other testimony was given, on the part of the plaintiff Jacob Eby was sworn :—I live close by, on the same side ; noticed the hole often ; open two or three months ; hole 16 feet long ; near 4 feet wide ; 8 or 9 feet deep ; no railing around.

Proposed to ask if dangerous or not ; objected to, admitted, and exception sealed.

[Beatty *v.* Gilmore.]

Not very dangerous, but I thought people might fall in by accident; I examined it.

Cross-examined:—A porch projected; 4 feet high; posts at the corners; goes out beyond the area; a person passing would have to turn to the left.

John H. Briggs sworn:—Noticed this place particularly the same day; we turned and looked at it; an area probably 4 feet wide, and 20 feet long, embracing the steps 7 feet deep; no protection there whatever, neither at the side or steps, to prevent falling from the pavement or stone step into the hole; turn to the right or left in coming in or going out of the door, a person would fall in; I did not particularly notice it before.

It was proposed to ask the witness, if in his opinion, from what he then saw, the place was dangerous or otherwise, and what opinion he then formed on that subject. Objected to, admitted, and exception sealed.

I was then of opinion, and still am, that it was a dangerous place.

Another witness testified that he told the defendant before the accident, that the place was dangerous, and some one might fall into it; and that he replied they must look out for themselves. That it was open from the summer till the time of the accident in January following.

Another witness testified that he told the defendant he thought the place very dangerous; defendant said he thought not, no danger of any body falling in from the pavement. I said he ought to have something over it to keep children from falling in. · Defendant said he intended to have it railed; that was during the summer, as the building was going up; latter part of July.

Cross-examined:—I thought it dangerous, or would not have said so.

PEARSON, J., charged the jury, *inter alia:* The plaintiff must prove that he was injured in consequence of an unlawful act of the defendant; and if the latter avers that there was want of care on part of the plaintiff, he must prove it. The *onus probandi* rests on the person who attempts to excuse himself through want of proper care in the other.

There are then two points for consideration:

1. Was the place as made and kept up by the defendant, under all the circumstances, a public nuisance? If you believe the description given by the witnesses of both parties, and undisputed as to the nature and extent of this area, the length of time it was left open, and the publicity of the place, it being a great thoroughfare, we feel bound to declare that in point of law it did amount to a public nuisance, and that the defendant is responsible for every injury received by any man thereby in his person or his pro-

[Beatty v. Gilmore.]

perty, provided the person injured was using reasonable caution and care at the time.

2. Was the plaintiff guilty of any rashness or want of proper care in going where he did? for if he was, he cannot recover. And here you will take into consideration the light from the lamps on the out and inside of the house, and whether the glare from the windows would aid the plaintiff in seeing the danger or tend to dazzle his eyes; also, that there was snow on the ground, and what has been said by the witnesses as to the difficulty or facility of seeing, and consider from the evidence whether the plaintiff was sober or not; and if you determine in his favor, then the remaining question is as to the amount of damages he is entitled to recover, which is a question for your sound judgment and discretion.

To this charge the defendant excepted.

Verdict was rendered for plaintiff, finding $1500 damages.

The following was assigned for error:

1. The court erred in the matter contained in the bills of exception taken to the admission of the testimony of Jacob Eby and John H. Briggs. [This related to the admission in evidence of their opinions that the place was dangerous.]

2. The defendant asked the court to charge the jury that "the onus probandi as to proper caution, and the absence of negligence on the part of the plaintiff, rests upon plaintiff," which instruction the court refused to give, but said, "it is not necessary for the plaintiff to prove he was using all possible care; the defendant is responsible for his unlawful conduct, unless he can prove negligence or want of care on part of plaintiff, by direct proof or by circumstances;" and again, "if the defendant avers that there was want of care on the part of the plaintiff, he must prove it. The onus probandi rests on the person who attempts to excuse himself through want of proper care in the other."

3. There was error in the court instructing the jury, that in point of law, the area-way, or opening complained of, did amount to a public nuisance.

The case was argued by McCormick, for Beatty, plaintiff in error.

Fisher and Kunkle, for defendant.

The opinion of the court, filed July 3, was delivered by

BELL, J.—In Butterfield v. Forrester, 11 East 60, it was laid down that to support an action like the present, two things must concur—an obstruction or hindrance in the road or highway by the fault of the defendant, and no want of ordinary care to avoid it

[Beatty *v.* Gilmore.]

on the part of the plaintiff. In that case, the plaintiff had been guilty of actual misconduct in riding furiously through a street of a populous town, and it has been thought this circumstance is to be considered in every practical application of the rule there ascertained. On hearing the motion for a new trial, Mr. Justice BAILEY, before whom the cause had been tried at *Nisi Prius*, remarked, "The plaintiff was proved to be riding as fast as his horse could go, and this was through the streets of Derby. If he had used ordinary care he must have seen the obstruction, so that the accident appeared to happen *entirely from his own fault.*" By way of illustration, Lord ELLENBOROUGH said, "In cases of persons riding upon what is considered the wrong side of the road, that would not authorize another purposely to ride up against them. One person being in fault will not dispense with another's using ordinary care for himself." Of this illustration it was judiciously observed, that of the propriety of one man's abstaining from riding purposely against several others, little doubt can be entertained. What shall be deemed ordinary care to avoid a danger, the existence of which there is no reason to anticipate, does not appear to be equally clear; and it has been thought that the principle upon which the decision proceeded was, that want of care in respect of the probability of injury to others, from riding fast through a public street, is tantamount to a want of care in avoiding that which might be injurious to the party himself, for had he been riding over his own field, at the rate of twenty miles an hour, it would, probably, not be contended he was chargeable with want of care; and had his horse been killed by falling into a pit wrongfully dug there by a stranger, it could scarcely be doubted the latter would be responsible for the injury: Note to Burgess *v.* Gray, 50 *E. C. L.* 580, note a. In subsequent cases, where Butterfield *v.* Forrester was brought to view, it was held that although there may have been negligence on the part of plaintiff, *yet unless he might,* by the exercise of ordinary care, have avoided the consequence of the defendant's negligence, he is entitled to recover; if by ordinary care he might have avoided, then *he is the author of his own wrong :* Bridge *v.* The Grand Junction Railroad Co., 3 *Mees. & W.* 246 ; Davis *v.* Mann, 10 *Mees. & Welsby.* What shall be esteemed ordinary care, must of necessity, depend upon the peculiarity of each case. Hence, it was well observed in Robinson *v.* Cone, *Am. Law Jour.* for January 1851, 313, in the Supreme Court of Vermont, that, though Butterfield *v.* Forrester has been considered as furnishing the rule for charging juries in road cases, and, as a general rule, is unobjectionable, yet, in its application to the almost endless variety of incidents attending injuries of this character, perplexing doubts will spring up which the general formula is wholly insufficient to remove. The instances in which it has been generally applied are of accidents occurring during the continuance

of daylight, where usually the exercise of ordinary prudential care is sufficient to avoid injury, and witnesses are commonly found to testify of the circumstances attending the catastrophe. But where, in the darkness and solitude of the night, one suffers grievous injury from the culpable commission or omission of another, the carelessness which would excuse, ought certainly to be of a very gross character, made apparent by direct or circumstantial proof. This reasonable principle seems to have been present to the mind of Lord ELLENBOROUGH, when determining Weld v. The Gas Light Co., 2 E. C. L. 350. Speaking of the trenches opened by the defendants to lay gas-pipes, he said that, though authorized to open the streets for this purpose, they were bound to execute it as innocently as possible, even in the daytime, and, *in the night-time*, to take especial precaution that no one shall receive an injury.

In the case before us, the culpable neglect of the defendant in suffering the continuance of what was correctly denominated a dangerous nuisance, upon one of the most frequented thoroughfares of this town, is proved by the verdict. Indeed, under the proofs, it could not well be denied, even by himself. Under this established fact, the court below, applying the rule I have stated, told the jury that, though the owner of the property had unlawfully permitted the excavation complained of to remain open to the danger of passengers, yet if the plaintiff fell into it from his own want of reasonable care, he could not recover in this action; that to sustain it, there must be the concurrence of negligence, or the commission of an unlawful act on the part of the defendant, and reasonable care exercised by the plaintiff; mutual carelessness being destructive of the title to sue. This instruction is certainly in accordance with the doctrine of the most approved authorities on this subject. Yet the plaintiff in error complains because the jury was informed that the *onus* of showing the exercise of proper care and caution by the plaintiff, was not upon him, but upon the party averring it. It was, perhaps, of little consequence, in this case, whether in this particular the court was right or wrong, since the plaintiff's fall into the area was witnessed by many persons, who testified of all the incidents attending it, and thus enabled the jury to ascertain whether the accident was fairly ascribable to his inexcusable carelessness. But it seems to us, the opinion expressed is well founded. The rule, as I have said, is, that apparent negligence on the part of the injured person puts him so far in the wrong as to bar his action. But with perhaps the exception of a single case, to be presently more particularly noticed, I have nowhere met the assertion that, in the absence of all proof on the subject, carelessness is, *prima facie*, to be presumed. Such a principle would involve intolerable hardship, by protecting the culpable party in those instances where the chance of disaster is multiplied by the obscurity of night. To say that the very fact which

increases the danger shall protect him who was the author of it, by rendering the necessary proof difficult, or cutting it off altogether, seems to us too unreasonable to attract the deliberate sanction of tribunals created to watch over the interests of the community. Generally, the direction is that the jury is to judge from the surrounding circumstances, whether the plaintiff exercised the caution which ought to mark the conduct of a prudent person. Such was the instruction given here, and I may say it is in accordance with what was said in a cause tried before me, in Philadelphia, at *Nisi Prius*, where the plaintiff had fallen into an open cellar, while employed about his ordinary avocations before daylight, no one having immediately witnessed the fact. The able counsel for the defendant spoke of an appeal on other points, but finally became satisfied no error had been committed: Myers *v.* Snyder, *Brightly's Rep.* 489. Indeed, I know of no other guide that can be followed with a due regard to private safety. The jury is to judge from the whole case as proved. If there be no facts shown from which a deduction can be drawn, the presumption should be reasonably against him whose misconduct rendered the accident possible. The precedent in which it is supposed a different view was taken is Law *v.* Crombie, 12 *Pick.* 176. It was there said that the burden of proof is on the plaintiff, not only to show misconduct in the defendant, but ordinary care and diligence on his own part. The injury complained of was occasioned by a collision in open day, from injudicious driving a sleigh on the highway. The facts, too, are very meagerly reported. In support of the proposition, three adjudications are cited, neither of which go farther than the rule I have laid down; one of them indeed being Butterfield *v.* Forrester. Had it, however, the sanction of other authority, we should be disinclined to adopt it, as insisted for the defendant, in a case like the present. In addition to its inconvenience, and the gross injustice it might work in a variety of cases, it may be remarked it is hostile to the principle that he who avers a fact in excuse of his own misfeasance, must prove it.

The reception of Eby's and Briggs's testimony as to the dangerous character of the excavation was entirely proper. It was, in truth, rather the assertion of a fact, dependent, in some measure upon opinion, than of an abstract opinion without more. It is a species of testimony always resorted to in cases like the present. In this very instance, many witnesses so testified for the plaintiff before objection was thought of, and the defendant himself introduced a large number to testify the place was not dangerous. The books furnish many similar examples. In Jones *v.* Boyce, 2 *E. C. L.* 482, a witness testified, "I should have jumped off of the stage, had I been in the plaintiff's place, as the best means of avoiding the danger." In Jackson *v.* Follett, 3 *E. C. L.* 233, evidence was given to show that the coachman had *adopted*

[Beatty v. Gilmore.]

*the most prudent course*, in turning out of the middle of the road to avoid a wagon, in doing which the plaintiff's leg was broken. In Bremer v. Williams, 11 *E. C. L.* 437, where a coach proprietor was sued for an injury occasioned by the alleged insufficiency of the coach, a coachmaker who had repaired it was received to swear he had *every reason to believe it safe.* In Drew v. The New River Co., 25 *E. C. L.* 634, a case like that before us, the plaintiff proved by ten witnesses that mould and stones, taken out of a trench dug by the defendant's servants, were so laid as *to make it unsafe* for persons walking along. And finally, in Wilkes v. Hungerford Market, 29 *E. C. L.* 336, an action for a nuisance in stopping up a street, witnesses were called to prove that the complaint was not of the buildings the defendants were authorized to erect, but by keeping up the obstruction in *an unreasonable and unnecessary manner.* These may suffice to show the action of the court below was right, though many others of like character might be adduced.

It is unnecessary to say any thing of the third error further than that the opening in a much frequented street was properly spoken of as a public nuisance under the circumstances.

Judgment affirmed.