## McNerney *v.* Reading City, Appellant.

*Negligence—Highways—Municipalities—Custom.*

No usage or custom will justify an encroachment on a public highway, or the presence therein of an obstruction which renders it unsafe for the uses to which it is dedicated.

*Unguarded openings in sidewalk—Public nuisance.*

An unguarded opening, four feet and nine inches in width in a pavement, and extending from the building line into the street five feet and six inches, is, if located in a much frequented street, a public nuisance, and neither lapse of time nor the existence of like nuisance elsewhere, with the consent of the municipality, will legalize it: King v. Thompson, 87 Pa. 365, distinguished.

*Evidence—Witness—Opinion.*

In an action to recover damages for injuries sustained by falling into an unguarded area-way, it is proper to permit a witness who is familiar with the place where the accident occurred, to express the opinion that it was a dangerous place.

*Unwilling witness—Cross-examination.*

Where a witness proves unwilling, and gives evidence that is a surprise to the party by whom he is called, it is within the sound discretion of the court to permit a cross-examination of the witness by the party calling him, to show that his previous statements and conduct were at variance with his testimony.

*Evidence—Ordinance—Dangerous sidewalks.*

In an action against a municipality to recover damages for injuries sustained by falling into an unguarded area-way, it is proper to admit in evidence an ordinance of the city requiring such openings to be properly guarded.

Argued March 2, 1892. Appeal, No. 211, Jan. T., 1892, by

defendant, the city of Reading, from judgment of C. P. Berks Co., Dec. T., 1890, No. 24, on verdict for plaintiff, Henry F. McNerney. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Trespass to recover damages for injuries sustained by falling into an unguarded area-way in a pavement on a public street.

The material facts, as they appeared at the trial before ERMENTROUT, P. J., are stated in the opinion of the Supreme Court. The area- or cellar-way there described was protected at the sides by a sloping iron rail two feet in height at the building line and eight inches high at the highest point where it was fastened to the pavement. Plaintiff, between ten and eleven o'clock at night, caught his foot in the iron rail and was tripped and thrown into the cellar-way, sustaining injuries.

A witness for defendant was asked, at the trial: " Q. Is it usual and customary in this town to have underground alleyways ? " Objected to.

Mr. Snyder: The defendant proposes to show that it is usual and customary in the city of Reading to have underground entrances into houses and that it is necessary for the convenient use and enjoyment of dwelling-houses as they are built in this city ; also to show that the house of Mr. Tracy is of that character.

Mr. Stevens: Objected to, because testimony as to what is usual and customary is not relevant to the issue. If the city of Reading is accustomed to allow and maintain unsafe and negligently constructed area-ways on its highways it cannot avail as a matter of defence in a suit against the city by one who has been injured ; the offer is generally irrelevant and immaterial.

The Court: As the offer stands now we will sustain this objection. Exception. [1]

Plaintiff then offered in evidence city ordinances of 1888–9, approved Jan. 5, 1889. Objected to as not rebuttal and as irrelevant. Admitted; exception. [2]

Said ordinance, entitled " An ordinance to require openings in pavements to be properly guarded," provides : " Sec. 1. All owners of property which may have an underground alley or open passage-way occupying portion of the sidewalks in this

city shall have the same protected or guarded by a covering of wood or other substantial material, or guarded with an iron railing in order to avoid danger likely to arise by reason of such opening being unguarded. Sec. 2. Any owner of such property failing to comply with the provisions of this ordinance shall suffer and pay a penalty of not less than $10, nor more than $20, to be recovered in the name and for the use of the city of Reading. Sec. 3. It shall be the duty of the building inspector to enforce the provisions of this ordinance."

William H. Boyer, one of plaintiff's witnesses, was asked: " Q. Do you remember Thomas Tracy, the proprietor of Harugari Hall saying, ' For goodness sake do not call me as a witness, I have been maintaining a dangerous place for five years,' and did I not then say, ' No, we will call Mr. Boyer and leave you off.' " Objected to as irrelevant. Question allowed ; exception. [3]

By Mr. Stevens : " Q. Do you remember that conversation taking place ? A. Yes, sir, I remember that. Q. Do you not remember the other ? A. I do not remember the other. Q. Do you not remember of saying it was a dangerous place ? A. No, sir, I do not remember of saying that."

Warren O. Spencer, one of plaintiff's witnesses, who had examined the place after the accident, was asked: " Q. In your opinion, is or is not the area-way a dangerous place ? " Objected to, because it has not been shown that the witness is an expert as regards area-ways or matters of that kind, and that he has no knowledge on this subject. Question allowed and exception. [5]

The witness then said he thought the place very dangerous.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting bills of exceptions and evidence.

*William J. Roorke, Jefferson Snyder* with him, for appellant, cited King v. Thompson, 87 Pa. 365.

*William Kerper Stevens,* for appellee, cited on the question of negligence: Shearman & Redfield on Negligence, par. 360, p. 433 ; Temperance Hall, etc. v. Giles, 33 N. J. L. 260 ; Davenport v. Ruckman et al., 37 N. Y. 568 ; Myer v. Snyder, Brightly, 489 ; Beatty v. Gilmore, 16 Pa. 463 ; Fox v. Booth,

1 W. N. 177.   On the admission of the city ordinance : Phila.
& Reading R. R. v. Ervin, 89 Pa. 76.   On the cross-examination
of unwilling witness : Bank of Northern Liberties v. Davis, 6 W.
& S. 285 ;  Newell v. Homer, 120 Mass. 277.   On the expression
of an opinion by a witness as to the dangerous character of a
place : Beatty v. Gilmore, 16 Pa. 463 ;  Graham v. Pa. Co.,
139 Pa. 160.

OPINION BY MR. JUSTICE MCCOLLUM, October 3, 1892.

The appellee was severely injured on the night of the 15th
of September, 1890, by falling into an open area-way on South
Sixth street in the city of Reading.   He claims that the injury
he received was the result of the city's negligence in the care
of its streets, and he brought this action to recover the dam-
ages he sustained in consequence of it.   The area-way was in
front of Harugari Hall in which Thomas Tracy kept a saloon.
It was four feet and nine inches in width and extended from
the building line into the street five feet and six inches.   It
was an opening into which persons passing along the sidewalk,
or to and from the building in the night-time, might accidentally
fall, without any fault on their part.   The jury found, on suf-
ficient evidence and under instructions which are not assailed,
that this opening was insufficiently guarded, and a dangerous
obstruction in the highway and that there was no negligence
of the appellee contributing to the accident.

The specifications relate to rulings on offers of testimony.
The first alleges error in the rejection of the appellant's offer
to show that it was usual and customary, and necessary for the
convenient use and enjoyment of dwelling-houses, in the city
of Reading, to have underground entrances into them, and
that the house occupied by Tracy was of that character.   The
objection to this offer was that it was not a defence to the ac-
tion, or relevant to the issue, to show that the city was accus-
tomed to allow other similar and dangerous obstructions in its
streets.   It is undoubtedly true that no usage or custom will
justify an encroachment on a public highway, or the presence
therein of an obstruction which renders it unsafe for the uses
to which it is dedicated.   An unguarded opening like that
into which the appellee fell, is, if located in a much frequented
street, a public nuisance, and neither lapse of time nor the ex-

istence of like nuisances elsewhere, with the consent of the municipality, will legalize it: Beatty v. Gilmore, 16 Pa. 463 ; Bacon v. City of Boston, 3 Cush. 174, and Temperance Hall Association of Trenton v. Giles, 33 N. J. L. 260. Besides it will be noticed that the rejected offer did not propose to show that the underground entrances to other houses in Reading were located in the public streets, or were constructed and guarded like the area-way in question.

It is claimed however that the offer was made on the authority of King v. Thompson et ux., 87 Pa. 365, and is sustained by it. It was decided in that case that an opening in front of a cellar window such as was usual and customary in the city of Allegheny for lighting and ventilating cellars and reasonably necessary for that purpose, was not per se a nuisance. The opening was about fifteen inches in width, three feet in length, and projected from the wall of the house about sixteen inches. An opening of this description is wholly unlike the opening exhibited by the evidence in this case. In view of its size and surroundings this court said of it "it is really difficult to see how the plaintiff succeeded in getting into the hole." We think King v. Thompson, supra, does not sustain the offer embraced in the first specification and that no error was committed in its rejection.

The ordinance of January 5, 1889, was admitted under objection. It was an act of the municipality and in effect a declaration by it that the public safety required that openings in pavements should be properly guarded. It related to a subject under investigation in the case, and the general rule that the acts and declarations of parties concerning a matter involved in the suit are admissible, applies. Besides, it was an ordinance to enforce the performance of a common-law duty, and as such it was properly admitted : Phila. & Reading R. R. Co. v. Ervin, 89 Pa. 71.

It is apparent that Boyer was an unwilling witness and that his evidence was a surprise to the appellee who called him to the stand. It was proper therefore for the learned trial judge, in the exercise of the sound discretion which the law allows him in such cases, to permit a cross-examination of the witness by the party calling him, to show that his previous statements and conduct were at variance with his testimony. This exam-

ination "is not substantive evidence of itself but is permitted to neutralize the evidence given by the witness:" Bank of Northern Liberties v. Davis, 6 W. & S. 285. An appellate court will not interfere with it unless clear and injurious error appears. In the examination as conducted in this case we fail to discover anything which calls for a reversal of the judgment.

It is claimed that it was error to allow Warren O. Spencer to testify that the area-way was a dangerous place. No case is cited to support this claim and there is no suggestion in the objections or the argument that the case is not a proper one for evidence of this character. The contention on this point seems to be that the examination which the witness made of the premises in question was not sufficient to qualify him to give the testimony objected to. To this we cannot agree. It sufficiently appears that he was possessed of the requisite knowledge to enable him to speak intelligently on the subject in reference to which he was interrogated. In this case, as in Beatty v. Gilmore, supra, "it is not clear that the mere description of the place would convey to the jury an adequate idea of it with reference to the danger," and it was therefore proper to allow the witness to supplement his description by his opinion founded on his actual observation of it: Graham et al. v. Pa. Co., 139 Pa. 149.

The specifications are overruled. Judgment affirmed.