# Laudenberger, Appellant, v. Easton Transit Company.

*Negligence—Street railways—Automobiles—Dangerous. crossing — Right-angle collision — Passenger in automobile — Gratuitous guest—Death—Familiarity with locality—Contributory negligence —Judgment for defendant n. o. v.*

In an action against a street railway company to recover for death of plaintiff's husband resulting from a right-angle collision between an automobile and one of defendant's cars, deceased was guilty of contributory negligence as a matter of law and judgment was properly entered for the defendant non obstante veredicto where it appeared that deceased was a guest of the driver of the automobile, beside whom he was seated; that both were familiar with the locality; that the railway tracks were on the near side of the intersecting road; that the view down the tracks was so obstructed that persons in the automobile could not see in the direction from which the car was coming until the automobile was from ten to fifteen feet from the tracks; that a "stop, look and listen" sign was posted several hundred feet from the crossing and was plainly visible to deceased and the driver; that the automobile did not stop but slackened its speed from twenty to ten miles per hour, and neither the motorman nor the driver saw each other until the street car and the automobile were less than twenty feet apart, and it was too late for either to avert the collision.

Dunlap v. Philadelphia Rapid Transit Company, 248 Pa. 130, followed.

Argued March 12, 1918.    Appeal, No. 42, Jan. T., 1918, by plaintiff, from judgment of C. P. Northampton Co., Nov. T., 1916, No. 86, for defendant n. o. v., in case of Isabella M. Laudenberger v. Easton Transit Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.    Affirmed.

Trespass to recover damages for death of plaintiff's husband.

The facts appear in the following excerpt from the opinion of STEWART, J., sur defendant's motion for judgment n. o. v.:

This is a motion by defendant for judgment n. o. v. It appeared from the evidence in this case that the husband of the plaintiff was riding in an automobile with Martin Neeb and his son, Elvin Neeb. Martin Neeb owned the automobile, and was driving it, seated on the left-hand side of the automobile. Mr. Laudenberger was on the right of the driver, and in the back seat was Elvin Neeb. They were proceeding northwardly on the road known as the Wilson Crossing Road. This road ran into and stopped at the Easton and Bethlehem State Road. On the south side of the State road is the track of the Easton Transit Company which was built very close to the property line. Along the State road towards the east at a very close distance on September 11, 1916, was a peach orchard which was in full leaf. This orchard also extended southwardly along the Wilson Crossing Road, back nearly to the railroad track, which crossed the road, 890.5 feet south from the transit company's track. It was impossible for anyone going along the Wilson Crossing Road towards the transit company's track to obtain a view of a car approaching from the east until he reached a point, ten, twelve or fifteen feet from the track.

The undisputed evidence is that from a point on the transit company's track, where the center of the Wilson Crossing Road intersects it, a person standing beside the south rail could see a car approaching from the east at a distance of 1,010 feet. At a distance of 322 feet from the transit company's tracks, on the Wilson road, there is a railroad warning sign, and on a telephone pole about three and a half feet from the south rail of the transit company's track, where the road runs into the State highway, there is a large transit company sign with large letters on it and the words, "stop, look, listen." That is Exhibit No. 8 in the case. Two hundred feet west of the transit company's crossing is what is known as the Ellicott House. There is a downward grade from east to west in the transit company's track for at least 760 feet, east from the crossing, varying in degree, but the highest

grade is 3.33%. There is also a slight upward grade on the Wilson Crossing Road, extending from a point about ten or fifteen feet to the transit company's track. At about four-thirty p. m. on a perfectly clear day, Mr. Neeb drove his automobile along the Wilson Crossing Road at a speed of twenty miles an hour, until he came within a point about 150 feet from the transit company's track, when he slackened down to about eight to ten miles an hour, when he threw on his power to go up the slight incline, and to cross the tracks. He testified that he heard no whistle, and he also testified that he looked ahead for the crossing. He did not stop at any time, and while the auto was on the track, it was struck by a trolley car which was proceeding from the east at a speed, according to the motorman's testimony, of from eighteen to twenty miles an hour. One of the witnesses, however, states that they were going, to the best of his judgment, thirty to thirty-five miles an hour. Mr. Laudenberger was instantly killed. Both the motorman and Mr. Neeb testified that they saw each other within a very short space, the car being not over twenty feet from the point of collision, and the automobile from twelve to fifteen feet. We are here endeavoring to accurately present the situation, but the exact distances will appear in the testimony, which we shall quote hereafter. The learned counsel for the defendant insists that there is no evidence that the defendant company was negligent; that a preponderance of the evidence shows that the motorman blew his whistle at a proper place; that both he and the conductor so testified; that it was plainly heard by the boy, Brunell, who was right at the crossing, and by Miss Hammann, who was in an automobile; and that plaintiff's testimony is purely negative; that the evidence discloses that the motorman was standing in a proper position, and that he threw on the brakes as soon as he saw the automobile; and that there was no negligence in the rate of speed at which the car was traveling. We do not propose to discuss these questions, because a careful

examination of the entire testimony has convinced us that the other defense of contributory negligence is conclusive of the case.......Dunlap v. Philadelphia Rapid Transit Co., 248 Pa. 130, is on all fours with this case. In that case Dunlap was killed. He was riding in an automobile with Beckman, its owner and driver. Beckman was a constable, and Dunlap was his deputy. They were transacting business in the City of Philadelphia. The negligence charged was excessive speed and failure to give warning. The collision occurred at a crossing of two streets. Beckman was a witness for the plaintiff, just as Neeb was here. Mr. Justice FRAZER sums up the matter so fully that we quote from his opinion as follows: "He further testified that plaintiff's husband said nothing as they approached Eighteenth street as to the likelihood of meeting an approaching car, nor made any effort to observe whether or not the track was clear, and that 'he was just simply sitting there looking.' Under these circumstances, was plaintiff's husband chargeable with negligence? As a general principle of law a passenger is not chargeable with the negligence of his carrier. That rule, however, does not relieve the passenger of the duty of exercising reasonable care to avoid danger. He is responsible for his acts of either omission or commission. In this case plaintiff's husband should be held to a somewhat higher degree of duty than a passenger for hire would be held. Beckman and plaintiff's husband were engaged in a common purpose, and had a common object in view, that of transacting business, in which both were interested. While Beckman's negligence should not be imputed to plaintiff's husband, the latter, however, was not relieved from all responsibility. It was incumbent on him to exercise proper care and not sit quietly by and fail to see danger that was plainly imminent: Dean v. Pennsylvania Railroad Company, 129 Pa. 514; Brommer v. Pennsylvania Railroad Company, 179 Fed. Repr. 577. He was as familiar with the neighborhood as Beckman, and undoubtedly saw the car tracks

292 LAUDENBERGER, Appel., *v.* EASTON TRANSIT CO.

of defendant on Eighteenth street, and presumably was aware that a car might pass at any moment. Under such circumstances it was the duty of plaintiff's husband to at least have used his eyes in the proper direction and if he saw the car approaching, as he undoubtedly would, warned Beckman of the danger. In not having done so, or made any effort to discharge a plain duty he owed to Beckman as well as himself, he was chargeable with negligence, which contributed to and made the accident possible. Plaintiff therefore is not entitled to recover." We are unable to see any difference between the principle of that case and the present case, and we were in error in permitting the jury to consider the question whether Mr. Laudenberger exercised reasonable care for his own safety, and whether he joined in testing a patent danger.

Verdict for plaintiff for $3,000.00. The court subsequently entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Clayton V. Heermance* and *Kirkpatrick* and *Maxwell,* for appellant.

*Robert A. Stotz,* for appellee.

PER CURIAM, May 6, 1918:

The judgment for the defendant non obstante veredicto was entered on the ground of the contributory negligence of the deceased. This was inevitable under the testimony, and defendant's tenth and eleventh points should have been affirmed. The learned trial judge so admits in his opinion granting defendant's motion for judgment, and, on so much of that opinion as points out that no distinction can be made between Dunlap v. Philadelphia Rapid Transit Company, 248 Pa. 130, and the present case, the judgment is affirmed.