# Martin, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Grade crossing accident—Stop, look and listen— Automobile — Negligence of driver — Contributory negligence of passenger.*

1. Although a passenger in an automobile is not chargeable with the driver's negligence, he is responsible for his own lack of reasonable care.

2. It is the duty of each person traveling in an automobile being used for a common purpose to use ordinary care to safeguard the party and give warning of approaching danger.

3. A passenger is chargeable with the driver's negligence in so far as he concurs therein, and failure to protest against reckless driving amounts to a concurrence.

4. A passenger riding in the front seat of an automobile on a bright day, who without protest of the driver's failure to stop, look and listen at a railroad crossing in plain view, and without warning

the driver of an approaching train until a collision was inevitable, is guilty of contributory negligence as a matter of law.

5. Although a passenger is not required to exercise the same high degree of care and constant watchfulness as the driver, he must exercise a reasonable degree of watchfulness, and when occasion requires warn the driver of threatened danger, and he may, as a matter of law, be chargeable with contributory negligence even where he has done nothing.

Mr. Justice SIMPSON filed a dissenting opinion.

Argued May 12, 1919.   Appeal, No. 277, Jan. T., 1919, by plaintiff, from judgment of C. P. Fayette Co., Sept. T., 1915, No. 532, refusing to take off compulsory nonsuit in case of Pearl Belle Martin v. Pennsylvania Railroad Company.   Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Affirmed.

Trespass to recover damages for death of plaintiff's husband.   Before VAN SWEARINGEN, P. J.

The court granted a compulsory nonsuit on account of decedent's contributory negligence, which it subsequently refused to take off.   Plaintiff appealed.

*Error assigned* was in refusing to take off nonsuit.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* with him *George Patterson,* for appellant, cited: Azinger v. Pa. R. R., 262 Pa. 242.

*R. W. Playford,* of *Playford & Phillips,* for appellee, cited: Eline v. West Maryland Ry., 262 Pa. 33; Hardie v. Barrett, 257 Pa. 42; Laudenberger v. Easton Transit Co., 261 Pa. 288.

OPINION BY MR. JUSTICE WALLING, June 21, 1919:

This case grows out of a grade crossing accident.   Defendant's railway extending southerly from Connellsville crosses the public highway in question at grade, with a main track and a siding, the latter being about fifteen

feet west of the former. To the west of the siding the view to the north is obstructed by a building and that to the south by a high board fence along the south side of the highway, which extends east to within twenty-five feet of the main track. The eastbound traveler has a good view of the tracks to the south while passing over the twenty-five feet. The highway is paved with brick and practically level west of the crossing.

On the afternoon of August 22, 1914, James Coldren took his Ford car and with three other men, including Clarence Martin, plaintiff's husband, drove from Collier to Scottdale to witness a ball game. On the return home they came east by this highway, Coldren driving the car and Martin sitting at his right on the front seat. It was broad daylight, and, as they approached the crossing, so far as appears, the railroad tracks in front of them for three hundred feet were in plain sight. They were going about ten or twelve miles an hour and at that speed, without stopping or even hesitating to ascertain the movement of trains upon the tracks, drove past the end of the fence, over the side track and the space between the tracks and as the front end of the car approached the main track it collided with a rapidly moving northbound engine thereon, by which Mr. Martin was fatally injured. The driver of the automobile totally ignored the rule requiring the traveler to stop, look and listen before going upon a railroad track, and he was not requested to do so or cautioned by Martin or by either of the other passengers. Just an instant before the collision, and when too late to avoid it, Martin called the driver's attention to the oncoming train. The four men were engaged in a common purpose; however, it does not appear that the deceased was familiar with the crossing. There was evidence of defendant's negligence, but on the ground of Martin's contributory negligence the court below granted a compulsory nonsuit; and from its order refusing to take off the same this appeal was taken.

The holding is in harmony with our decisions, for while a passenger is not chargeable with the driver's negligence he is responsible for his own lack of reasonable care. The men were engaged in a common purpose and it was the duty of each to use ordinary care to safeguard the party and warn of approaching danger: Laudenberger v. Easton Transit Co., 261 Pa. 288; Dunlap v. Phila. R. T. Co., 248 Pa. 130. The opinion of the court by Mr. Justice MOSCHZISKER in Hardie et ux. v. Barrett, 257 Pa. 42, 46, says, "The rule is well established that, when possible dangers, arising out of the negligent operation of a hired vehicle or a conveyance in which one is riding as an invited guest, are manifest to a passenger, who has any adequate opportunity to control the situation, if he sits by without protest and permits himself to be driven on to his injury, this is negligence which will bar recovery." A passenger is chargeable with the driver's negligence in so far as he concurs therein, and failure to protest against reckless driving amounts to a concurrence. "A passenger who, having opportunity, fails to warn the driver of a known danger, and to protest against incurring it is guilty of negligence......If he [the passenger] knew they were approaching this grade crossing, or by the exercise of reasonable care should have known it, in time to warn Mr. Rogers [the driver] thereof and failed to do so he was negligent. In other words, a passenger who, knowingly and without protest, suffers the chauffeur to drive an automobile upon a railroad track without stopping to look and listen is negligent": Eline v. Western Maryland Ry. Co., 262 Pa. 33, 36. In Henderson v. Pennsylvania R. Co., 179 Fed. 577, it is stated (pp. 582-583) that, "It follows, therefore that Henderson [the passenger] was under obligations to take due care of his own safety. He was not a passenger for hire. He was engaged in the common purpose of a pleasure ride with the driver of the machine. He knew they were approaching a railroad crossing. Being free from the engrossing work of operating the machine, and oc-

cupying a seat beside the driver, he was in an even better situation than Brommer [the driver] to look out for the safety of the machine......And because Henderson joined with Brommer in a deliberate violation of this salutary rule [to stop, look and listen], we must hold him guilty of contributory negligence."

The failure to stop, look and listen before crossing a railroad track is the violation of a fixed legal duty and a passenger who knowingly and without protest suffers the driver to do so is negligent. In the present case Martin sat on the front seat where his means of observation were equal to the driver's; whether or not he was familiar with the locality was not important as the tracks crossed the brick roadway in front of him, and he permitted the car to be driven over the siding and on toward the main track without protest and only called attention to the train when the collision was inevitable. That Martin, passing along the highway that bright afternoon, saw or by the exercise of reasonable care should have seen the crossing in time to warn of the danger, is manifest; the evidence warrants no other conclusion. True, in case of death the presumption is that the deceased exercised due care, but here that is overcome by plaintiff's evidence.

In Vocca v. Penna. R. R. Co., 259 Pa. 42, plaintiff testified that before reaching the crossing he called upon the driver to stop, and we held the question of contributory negligence was for the jury; and the same was held as to the passenger in Azinger v. Pa. R. R. Co., 262 Pa. 242, where an automobile approached the track on a downgrade and the evidence was conflicting as to local conditions and as to the distance the track at the crossing was visible. And we there hold that a passenger is not bound to the same high degree of care as the driver and the fact that the former's attention is momentarily drawn to the side of the road does not necessarily convict her of contributory negligence. In other words, the passenger is not required to exercise the same high degree of care and constant watchfulness as the chauffeur; never-

theless, he must exercise a reasonable degree of watchfulness and when occasion requires warn the driver of threatened danger, and he may, as matter of law, be chargeable with contributory negligence even where he has done nothing.  For example, it would be negligence for a passenger not to warn the chauffeur whom he saw about to drive the car down a precipitous bank or in front of an approaching train; and the same is true where the passenger sees the chauffeur violating a fixed rule of law.  We are not speaking of a situation where a sudden peril exists and is known to the chauffeur, who is trying to avoid it, there the passenger's silence is usually commendable.  In the case at bar the peril did not arise until the law had been disregarded by attempting to cross the tracks, and actually crossing one and approaching the other, without stopping to look or listen. Martin should have given warning as they approached the first track and before the sudden peril arose.  Such warning if given and heeded would have prevented this most unfortunate accident.

The assignments of error are overruled and the judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE SIMPSON:

On August 22, 1914, Clarence Martin, whose widow is plaintiff in this case, went with James Coldren and two other friends from Collier to Scottdale in this State. They were riding in a Ford automobile belonging to Coldren and his brother.  On their return, which was by a different road from that used on the outward journey, Coldren was sitting on the left front seat driving the car, with Martin at his right, and the other two on the back seat.  The top of the car was down, and the day was clear. As they reached Connellsville about 5 p. m., they passed under a trestle and came out on a level brick road at a point possibly 100 yards from defendant's railroad tracks.  On the right-hand side of the road was a board fence, too high for the occupants of the car to look over,

and through which it was difficult to see anything. It ran to within 20 or 25 feet of defendant's tracks. On the left-hand side of the road was a company store. The automobile was traveling at about 10 or 12 miles an hour, and when it reached the end of the fence, for the first time its occupants could see southwardly along defendant's tracks, from which there was then coming one of defendant's trains, traveling at the rate of 40 to 45 miles an hour. Martin saw it and at once gave notice of the danger. Whether or not the automobile could have been stopped within the distance from the end of the fence to the track, does not appear in the evidence; but Coldren, either fearing it could not or losing his head, turned the car to the left, the right front wheel went over the near rail of the track, the car was struck by the train and Martin was killed. No signal was given of the approach of the train, and, so far as appears, there were no signs at the crossing indicating there was a railroad track at this point. There was no evidence to show Coldren was a careless or reckless driver; that decedent knew the tracks were there until the car passed the end of the fence, when he called out as above stated; that he knew Coldren was not going to stop, look and listen; or that the automobile could not stop within the space between the end of the fence and the nearest rail of the track. The court below held the evidence was sufficient to go to the jury on the ground of defendant's negligence, but that it showed plaintiff was guilty of contributory negligence, and therefore entered a nonsuit which it subsequently refused to set aside.

In the majority opinion it is said: "So far as appears, the railroad tracks in front of them [the occupants of the automobile] were in plain sight" as they approached the crossing. This is true, but so also so far as appears they were not in plain sight, and on a question of contributory negligence, and especially in a case of death, the burden is upon the admittedly negligent defendant to show the excusatory facts, if any there be. So also, conceding that

a passenger "who knowingly and without protest suffers the driver to do so [i. e. violate the duty to stop, look and listen] is negligent" and "he is responsible for his own lack of reasonable care" the question here was: Was decedent guilty thereof? No evidence so asserts, defendant's attempt to prove it wholly failed, and hence the legal principles should have no application. The majority opinion admits the decedent was "not required to exercise the same high degree of care and constant watchfulness as the chauffeur," yet it deprives his widow of recovery because he did not, and this without any conclusive proof of a lack of reasonable care.

Whether the case be viewed from the standpoint of the presumption that decedent exercised due care, or from the standpoint that the burden of proof of contributory negligence is on the defendant, in my judgment the majority opinion is erroneous; in fact the case is decided in direct antagonism to both those principles. In Schaefer v. Consolidated Ice Company, 238 Pa. 367, and again in Carley v. Dexcar Coal Mining Company, 262 Pa. 405, we say: "It may be said that in case of death that presumption always obtains"; and in Lotz v. B. & O. R. R. Co., 247 Pa. 206, 209: "The burden was on defendant to overcome by direct or positive evidence the presumption that the decedent had done all that the law required of him." In McManamon v. Hanover Twp., 232 Pa. 439, and Waltosh v. Penna. R. R. Co., 259 Pa. 372, we say a plaintiff is not required to prove freedom from contributory negligence, but only to present a case clear thereof, the burden of proof being on the defendant because, as we expressed it in Beatty v. Gilmore, 16 Pa. 463: "He who avers a fact in excuse of his own misfeasance must prove it."

Decedent was not the driver of the automobile and if, when the emergency arose, he had undertaken to interfere with Coldren in his driving, it is more than probable a disaster would have occurred which would have killed or seriously injured all its occupants. At most he was obliged to give warning and to protest when in the exer-

cise of reasonable care he knew or should have known of Coldren's negligence, and, as already stated, there was no evidence from which, as a matter of law, it could be decided he did not. In Vocca v. Penna. R. R. Co., 259 Pa. 42, 45, quoting from a Rhode Island case, we said: "'It cannot be said as a matter of law that such a guest or passenger is guilty of negligence because he has done nothing. In many such cases the right degree of caution may consist of inaction. In situations of great and sudden peril, meddlesome interference with those having control, either by physical act or disturbing suggestions and needless warnings, may be exceedingly disastrous in results. While it is the duty of such guest or passenger not to submit himself and his safety solely to the prudence of the driver of the vehicle, and that he must himself use reasonable care for his own safety, nevertheless he should not in any case be held guilty of contributory negligence merely because he has done nothing.'" And in Azinger v. Penna. R. R. Co., 262 Pa. 242: "The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant but might have discovered had he been giving attention to the roadway ahead of him."

But even if it be assumed that decedent knew or should have known of the existence of the railroad tracks, defendant's contention should fail. As there is no evidence, nor even pretence of evidence, that decedent actually knew Coldren intended to violate the rule of "stop, look and listen," or that decedent by word or deed joined in or suggested any such violation, it follows that his alleged contributory negligence could only have arisen after he knew or should have known Coldren did not intend to stop or could not stop before the railroad tracks were reached. It was essential therefore to ascertain when decedent was bound, as a matter of law, to know this. Clearly not when the automobile was 300 feet, 200

feet, or 100 feet from the tracks, for everybody knows an automobile traveling at the rate of 10 or 12 miles an hour can easily be stopped a number of times within any of those distances. Evidently therefore, he was obliged to protest only when the automobile was so close to the tracks, considering its rate of speed, that he knew or should have known it would not or could not be stopped before reaching them. But then it would have been too late to effectively protest, and hence the law which does not require vain things, will not punish plaintiff because decedent did not vainly protest when it would have been useless to do so. Moreover, as stated above, there was no evidence within what space the car could have been stopped when traveling at that rate of speed, that decedent knew what space was required, or that, before seeing the oncoming train, he had any reason to think it could not have been stopped after passing the end of the board fence and before reaching the tracks. Hence there was no evidence of a failure to protest after decedent knew or should have known Coldren intended to run the risk; and hence also there was no basis for the nonsuit.

For the reasons stated I dissent from the judgment of affirmance.