# Proctor v. Lehigh Valley Transit Company, Appellant.

*Negligence—Collision between wagon and car—Contributory negligence—Case for jury—Imputed negligence.*

In an action against a street railway company to recover damages for personal injuries resulting from a collision between a car and a wagon in which the plaintiff was riding, the case is for the jury and a verdict and judgment for plaintiff will be sustained, where the evidence shows that the plaintiff, the driver of the wagon, and three other occupants of the wagon were employees of the defendant company; that they were driving along a turnpike road at the side of which were the defendant's tracks; that to reach their destination they had to cross the tracks at right angles at one or the other of two cross roads, the latter of which was usually taken; that the wagon was covered on the sides but open at each end; that the plaintiff sat in the body of the wagon and had a clear view of the road for a considerable distance in the direction from which the car came, and that the wagon was struck while in the act of crossing the tracks at the first cross road; and defendant testifies that he did not know that the driver intended to turn from the road at this point.

Argued Jan. 29, 1912.   Appeal, No. 237, Jan. T., 1911, by defendant from judgment of C. P. Montgomery Co., Dec. T., 1910, No. 102, on verdict for plaintiff in case of Edgar E. Proctor v. Lehigh Valley Transit Company. Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before WEAND, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $3,000.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Nicholas H. Larzelere,* with him *Franklin L. Wright* and *Charles Townley Larzelere,* for appellant.—A passenger in a vehicle must use the best faculties which he has of seeing and hearing, and cannot remain careless and inert himself, and shift the whole responsibility upon the driver: Ehrisman v. Ry. Co., 150 Pa. 180; Kannenberg v. Traction Co., 215 Pa. 555; Thomas v. Ry. Co., 132 Pa. 504.

But, in addition to the facilities for a view of the approaching car by appellee, there remains the confessed fact by the appellee that he did not look for a car, and moreover denied the necessity of looking, but stood upon the ground that looking was solely the business of the driver. It cannot be said that a passenger in a wagon which is stopped preparatory to crossing can disregard his own senses and faculties of sight and hearing and rely upon his driver. This is fully sustained by the authorities: Kunkle v. Lancaster County, 219 Pa. 52; Bracken v. Penna. R. R. Co., 32 Pa. Super. Ct. 22; Crescent Twp. v. Anderson, 114 Pa. 643; Dean v. R. R. Co., 129 Pa. 514.

A person engaged in a common enterprise with another is bound by the latter's negligence occurring in the course of the enterprise: Wade v. Western Maryland R. R. Co., 220 Pa. 578; Greenwood v. P. W. & B. R. R. Co., 124 Pa. 572; Omaha & R. V. Ry. Co. v. Talbot, 67 N. W. Repr. 599; Hajsek v. R. R. Co., 97 N. W. Repr. 327; Bush v. Union Pac. R. R. Co., 64 Pacific Repr. 724; Mo. K. & T. Ry. Co. v. Bussey, 71 Pacific Repr. 261; Fechley v. Traction Co., 96 S. W. Repr. 421; Dean v. R. R. Co., 129 Pa. 514; Allyn v. R. R. Co., 105 Mass. 77; Lundergan v. N. Y. Cent. etc. R. R. Co., 203 Mass. 460 (89 N. E. Repr. 625).

The cause of the accident was the sudden act of the driver of the vehicle in suddenly turning across the track parallel to his course, without looking for an approaching car, which was distant only a short interval: Har-

man v. Traction Co., 200 Pa. 311; Kane v. People's Pass. Ry. Co., 181 Pa. 53; Thomas v. Pass. Ry. Co., 132 Pa. 504.

*Joseph S. Kratz,* with him *William H. Houston,* for appellee.—The case was for the jury: Little v. Telegraph Co., 213 Pa. 229; Carlisle Boro. v. Brisbane, 113 Pa. 544; Jones v. Lehigh etc. R. R. Co., 202 Pa. 81; Dryden v. R. R. Co., 211 Pa. 620; Carr v. Easton, 142 Pa. 139; Finnegan v. Foster Twp., 163 Pa. 135.

In Pennsylvania the law has been since Carlisle v. Brisbane, 113 Pa. 544, that the negligence of the driver of a private conveyance can never be imputed to an innocent plaintiff: Bunting v. Hogsett, 139 Pa. 363; Carr v. Easton, 142 Pa. 139; Finnegan v. Foster Township, 163 Pa. 135; O'Toole v. R. R. Co., 158 Pa. 99; Mann v. Weiand, 81* Pa. 243; Jones v. R. R. Co., 202 Pa. 81.

OPINION BY MR. JUSTICE STEWART, March 18, 1912:

The plaintiff was one of a company of five, all employees of the defendant company, who on the day of the accident had been together engaged in doing certain repair work. They were returning from their work to Ambler, the place from which they had started, in a covered wagon drawn by two horses. Yost, the foreman, was driving the team, and the course pursued was along a turnpike at the side of which ran the trolley tracks of the defendant company. There were two ways of reaching Ambler; one, the first to be reached, by turning aside from the turnpike at the point where the crossing of the trolley tracks was attempted, and going by Tennis avenue; and one by following the turnpike further and turning aside into Rose Valley road. When the first was reached, Yost turned his horse to the right with a view to cross the trolley tracks at that point and enter upon the Tennis avenue road. While in the act of crossing, a repair car of defendant company, coming from the same direction as that pursued by the wagon,

collided with the wagon, and in the collision the plaintiff received his injuries. The negligence charged to the company was, failure in the motorman to give proper signal of the approach of the car, excessive speed of the car, and failure of the motorman to have his car under control. The case exhibits the usual conflict of testimony with respect to each of these several grounds of complaint; and if the appeal involved nothing more than the question of defendant's negligence, little or no discussion would be required, since the evidence clearly warranted a submission of this question to the jury, and it was submitted under proper instructions. Another question was presented, however, which calls for and has received careful consideration. It is necessary here to state somewhat more fully the facts. The car which collided with the wagon, as we have remarked, was a repair car, and was therefore not running on any schedule of which the public had notice. The persons in the wagon however knew that this car was being employed on that day, having passed it while it was at rest at a point about 2,500 feet back from where the accident occurred; but they were without knowledge as to when it would start or the direction it would take. Unfortunately for the occupants of the wagon it followed in their rear. It appears from defendant's testimony that as one approaches the crossing attempted by the driver he may, if he look in the direction from which the car came, have an unobstructed view of the trolley tracks for about 800 yards. The parties in the wagon were seated in this manner: Yost, the foreman, was in the driver's seat with Rosenberger to his left on the same seat; Carruthers sat on a tool box in the body of the wagon; Weil sat on the end-gate facing to the rear, with his feet or legs outside the wagon; the plaintiff sat on a coil of wire on the floor of the wagon about midway between the front and rear of the wagon and opposite Carruthers. Occupying this position, plaintiff says he was somewhat lower than either Carruthers or Weil.

The curtains at the side of the wagon were down, completely shutting off the view at either side. But to the rear and front there was nothing to obstruct the view, there being no curtains at either end. This was the situation within the wagon as it approached the crossing and as the crossing was attempted. The wagon was about five feet in width, while in height it was quite sufficient to admit of one standing erect within it. Yost testified that when he reached a point within fifty or seventy-five feet of the crossing, he "sort of halted his team" which he had been driving at a trot, looked, and not seeing a car—though upon his own admission the track was clear of obstruction for a distance of 800 feet—he drove upon the crossing, and before he had knowledge of danger the collision occurred. We may assume for present purposes that Yost was guilty of negligence. But his negligence, whatever it was, may not be imputed to this plaintiff. Yost had entire charge or control of the team. One may not, when traveling as this plaintiff was, divest himself of all obligation to exercise reasonable care for his own safety. If the driver negligently incurs a danger which was understood by, or would have been known to, the passenger, had he exercised ordinary care, and the passenger make no interference and no effort to look out for his own escape, the rule that prevents a recovery by the driver in case accident happens and injuries are sustained, applies equally to the passenger. In the present case the plaintiff had equal, if not better, opportunity than Yost, the driver, to see the approach of the car, while traveling alongside the trolley tracks. Had he looked he must have seen the car; the whole rear of the wagon was open and the view in that direction unobstructed. He may not have been able to see from the exact position in which he sat, but the slightest change in position on his part would have disclosed to him the entire situation. He admits he did not look for a car, and seeks to excuse himself in this regard by putting the duty of looking

wholly upon Yost. The proximate cause of the accident, however, was not the driving alongside the trolley tracks, but the attempted crossing of them at that particular place. It follows that plaintiff's failure to look and his general inattention to his surroundings, can be counted against him as negligence only as these can be connected with the attempt to cross the tracks. If he did not know, and had no reason to suppose that Yost would there make the attempt, until it was too late for him to interfere or escape himself from the danger, the fact that he had failed to look as they were traveling along the road cannot be said to have contributed to the accident in crossing; for had he looked and seen the car approach, while a circumstance from which would arise a duty of increased care and caution in driving, the failure in such duty, if any there was, in no way contributed to the accident. It was not careless or reckless driving along the turnpike that caused the accident, but the reckless attempt to cross the trolley tracks. In this connection what duty rested on the plaintiff? The turn from the road to the crossing was almost at a right angle. Up until the moment the turn was made, nothing had occurred to indicate to the plaintiff that the crossing was there to be made. Was it then too late for him to do anything to avoid the result? So in its final analysis the question in the case must be, was the plaintiff bound to anticipate Yost's attempt to cross at that point? He knew that the crossing there was into a road which led to Ambler where they were going. He knew also of another further along which was also into a road which led to Ambler, and which he says, was the one usually taken. He says he did not know that Yost was going to attempt the former. Had he known that Yost's purpose was to adopt the first crossing, his negligence would be self-confessed. But he says he did not know it, and it cannot therefore be said that he failed in any positive duty prescribed by law. Whether he was guilty of negligence which contributed to the acci-

dent depended upon consideration of all the circum-
stances of the case, the precise measure of his duty un-
der the circumstances being indeterminate. The ques-
tion was therefore one for the jury, and it was submit-
ted under careful and proper instructions, resulting in
a verdict for the plaintiff.

The assignments of error are overruled, and the judg-
ment is affirmed.