Gudfelder *v.* Pittsburg, Cincinnati, Chicago & St. Louis Railway Company.

207    629|
210    ¹619|

207   629|
f39SC¹ 54|

*Negligence—Proximate and remote cause—Province of court and jury.*

In determining whether a negligent act is the proximate or remote cause of an injury, the jury must consider whether the facts constitute a continuous succession of events so linked together that they became a natural whole, or whether the chain of events is so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause—the negligent act.

If the facts of the case are in dispute the question of remote or proximate cause must go to the jury; if, however, the facts are undisputed and the inference to be drawn from them is plain, and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law.

In an action against a railroad company to recover damages for personal injuries, it appeared that the defendant's employees in shifting a number of cars containing naphtha permitted a collision to occur between two such cars, resulting in two holes being pierced in the front and near the bottom of one of the cars. These cars contained over 7,000 gallons of naphtha, the most of which ran out on the ground and into a catch basin near by. Shortly after the collision the car was moved along the track, the naphtha splashing and running out as the car moved. In passing, a switch light which had been previously lighted, ignited the naphtha. The flame of this fire followed the course of the running naphtha backward to the catch basin, and from the catch basin into a sewer which terminated at the mouth of a culvert near which was a bridge over the stream issuing from the culvert. Various small explosions followed in rapid succession in the sewer, and finally a violent explosion took place at the mouth of the sewer or culvert, and the plaintiff who was standing on the bridge near the mouth was injured. *Held,* (1) that the question whether the negligent act of the company's employees in permitting the naphtha to ignite was the remote or proximate cause of the injury, was for the jury; (2) that a verdict and judgment for plaintiff should be sustained.

Argued Nov. 6, 1903. Appeal, No. 165, Oct. T., 1903, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1902, No. 536, on verdict for plaintiff in case of Edward A. Gudfelder v. Pittsburg, Cincinnati, Chicago & St. Louis Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.            •            •

Trespass to recover damages for personal injuries.    Before

McClung, J.   The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $11,416.   Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*George B. Gordon*, of *Dalzell, Scott & Gordon*, for appellant.
In jure non remota causa sed proxima spectatur: Morrison v. Davis, 20 Pa. 171 ; Penna. R. R. Co. v. Kerr, 62 Pa. 353 ; Penna. R. R. Co. v. Hope, 80 Pa. 373 ; Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293 ; Pennsylvania Co. v. Whitlock, 99 Ind. 16 ; West Mahanoy Twp. v. Watson, 116 Pa. 344 ; South Side Pass. Co. v. Trich, 117 Pa. 390 ; Haverly v. State Line, etc., R. R. Co., 135 Pa. 50 ; Behling v. Southwest Penna. Pipe Lines, 160 Pa. 359 ; Scott v. Allegheny Valley Ry. Co., 172 Pa. 646 ; Wood v. Penna. R. R. Co., 177 Pa. 306 ; Roach v. Kelly, 194 Pa. 24 ; Hobbs v. London, etc., Ry. Co., L. R. 10 Q. B. 111 ; Goodlander Mill Co. v. Standard Oil Co., 63 Fed. Repr. 400 ; Read v. Nichols, 118 N. Y. 224 (23 N. E. Repr. 468).

*J. L. Ritchey*, with him *David S. McCann, C. A. O'Brien* and *Charles W. Ashley*, for appellee.—The negligence shown was the proximate cause of the plaintiff's injuries : Penna. R. R. Co. v. Hope, 80 Pa. 373 ; Haverly v. State Line, etc., R. R. Co., 135 Pa. 50 ; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469 ; Bunting v. Hogsett, 139 Pa. 363 ; Oil City Gas Co. v. Robinson, 99 Pa. 1 ; Corbin v. Philadelphia, 195 Pa. 461 ; Hess v. Berwind-White Coal Mining Co., 178 Pa. 239 ; Koelsch v. Phila. Co., 152 Pa. 355 ; Pollett v. Long, 56 N. Y. 200.

The same degree of care is required of carriers in handling and transporting combustible oils and explosives as is exercised by merchants and insurers in dealing with such articles :   Henry v. Cleveland, C. C. & St. L. R. R. Co., 67 Fed. Repr. 426 ; Standard Oil Co. v. Tierney, 14 L. R. A. 677 ; McGrew v. Stone, 53 Pa. 436 ; Phila., etc., R. R. Co. v. Boyer, 97 Pa. 191 ; Penna. R. R. Co. v. Ogier, 35 Pa. 60 ; Koelsch v. Philadelphia Co., 152 Pa. 355.   The question of proximate cause in this case as a question for the jury is ruled by cases in every jurisdiction almost

without number: Pennsylvania R. R. Co. v. Hope, 80 Pa. 373; Penna. R. R. Co. v. Kerr, 62 Pa. 353; Thomas v. Central R. R. Co. of N. J., 194 Pa 511; Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293; Haverly v. State Line, etc., R. R. Co., 135 Pa. 50.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904:

The defendant company's freight yard, know as the Sheraden yard, is located in the valley of Cork's run, about four miles west of its passenger station in the city of Pittsburg. The yard is a gravity yard, with a one per cent descending grade to the east, and is upwards of 4,000 feet long and has an average width of 500 feet. It is the eastern terminus of the company's freight business. Here, cars are delivered to it by its eastern, southern and northern connecting roads and trains are made up for the transportation of freight to the west. Cork's run discharged its waters into the Ohio river and drained the land now occupied by the freight yard. On the construction of the yard, the company replaced the run by a large culvert or sewer of various dimensions, being six feet in diameter at the beginning and thirteen feet by seventeen feet at its mouth. The mouth or eastern end of the culvert was in the open space of the run, about 200 feet from the river and about 2,800 feet from its inlet in the defendant company's freight yard. Midway between the river and the end of the culvert the run was crossed by a bridge, a part of a street known as River avenue in the borough of Esplen. There are several catch basins or sewer drops in the freight yard which conduct the surface water to the culvert; and at various points there are man holes and branch sewers opening into the culvert. At the inlet or western end of the sewer it is about three feet, and at its mouth or eastern end about eighty feet, below the surface. The bottom of the sewer is about 100 feet lower at its mouth than at the inlet or first catch basin.

On the afternoon of May 12, 1902, the defendant's servants were making up a freight train in the Sheraden yard. There were fourteen tank cars in the yard filled with naphtha which were to be a part of the train. The crew began to make up the train by first dropping a caboose and nine cars on track No. 3. They next attempted to put the tank cars in position in the train, and in dropping them by gravity down a descend-

ing grade to their place, a collision occurred between the two rear cars, resulting in two holes being pierced in the front, and near the bottom, of the rear naphtha car. This car contained over 7,000 gallons of naphtha, the most of which ran out on the ground and a large quantity of it into a catch basin, thirty to sixty feet east of the broken car. This was about 4 : 30 in the afternoon. A few minutes after the collision and after the greater portion of the naphtha had flowed out of the car, the draft of tank cars were drawn west on the track, the naphtha splashing or running out as the cars were moving, and in passing a switch light, which had been previously lighted and which was about 500 feet west of the catch basin, the naphtha ignited. The flame of this fire followed the course of the flowing naphtha towards, and into, the catch basin near the place of the collision. Various small explosions followed in rapid succession in the sewer after the flame had entered the basin, and very shortly thereafter a violent explosion took place at the mouth of the culvert which injured the plaintiff who was standing on the River avenue bridge. This action was brought to recover damages for these injuries. The court instructed the jury as follows : " In order that the plaintiff may recover, you must be satisfied that the introduction of that fire through the sewer drop in the yards was through the negligence of the defendant company, and that that fire was carried through the sewer and that it produced the explosion that injured this plaintiff. You must not only be satisfied of that, but you must be satisfied that this was the natural and probable consequence of the negligent act." The verdict was for the plaintiff subject to the question of law reserved, " whether there is any evidence in the case that the injuries of plaintiff were the proximate result of defendant's negligence." Subsequently, the court entered judgment on the verdict in favor of the plaintiff, and we have this appeal by the defendant company.

The question of the defendant company's negligence was settled against it by the verdict and is not raised here. The learned counsel for the defendant in support of their appeal maintain that the plaintiff's injuries were so remote as to preclude a recovery for the damages he sustained, and that the question, under the facts of this case, was one of law for the court and not of fact for the jury.

The application of the maxim, causa proxima et non remota spectatur, has been attended with some difficulty, and an examination of the decisions in the different states and by the courts of the United States shows that they have not at all times been entirely uniform on the subject. We do not deem it necessary, in disposing of the questions raised here, to review or discuss the numerous authorities cited in the elaborate briefs of counsel. It will be sufficient to refer to the principles announced in a few of our own cases. What is the proximate and what the remote cause of an injury has frequently been before this court and while there has been no attempt to lay down a fixed rule by which the question may be determined in all cases, certain tests have been suggested which if applied here will enable us to determine the liability of the defendant company under the facts disclosed by the evidence.

In Pennsylvania Railroad Company v. Hope, 80 Pa. 373, AGNEW, C. J., delivering the opinion, says : " The jury must determine whether the facts constitute a continuous succession of events, so linked together, that they become a natural whole, or whether the chain of events is so broken, that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause—the negligence of the defendants." In Hoag v. Lake Shore & Michigan Southern Railroad Company, 85 Pa. 293, PAXSON, C. J., states it to be the true rule in such cases "that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." In Pennsylvania Railroad Company v. Kerr, 62 Pa. 353, Chief Justice THOMPSON delivering the opinion says that the rule " is not to be controlled by time or distance, but by the succession of events." In Haverly v. State Line, etc., Railroad Company, 135 Pa. 50, our Brother MITCHELL speaking for the court, referring to the cases cited, says : " The three leading cases above referred to, though frequently cited on opposite sides of the same argument, are not at all in conflict in principle. The different results which were reached in them depended not on any different view of the law but of the facts, and on the application of the familiar doctrine that, where a plain inference is to be drawn from undisputed

facts, the court will decide it as a matter of law." In Bunting v. Hogsett, 139 Pa. 363, CLARK, J., delivering the opinion of the court, says : " It is true, as the appellant contends, that the injury must be the natural and proximate consequence of the negligence,—a consequence likely to flow from the negligent act. The engineer would be held to have foreseen whatever consequences might ensue from his negligence without the intervention of some other independent agency, and both his employer and himself would be held for what might, in the nature of things, occur in consequence of that negligence, although, in advance, the actual result might have seemed improbable."

Applying these tests to the facts of the present case we are convinced that the jury was justified under the evidence in finding that the negligent action of the defendant's servants was the proximate cause of the plaintiff's injuries. We must assume, as the jury has found, that the naphtha was ignited by the negligent act of the defendant's employees in drawing the punctured car near the burning switch light when the naphtha was flowing from it. The natural and inevitable consequence of that act would be apparent to the dullest intellect and must be presumed to have been foreseen by any employee who possessed the requisite intelligence to perform the duties required of him in operating a car containing such a dangerous substance as naphtha. The company's servants who were in control of the car saw the naphtha flowing from it and great quantities running along the tracks and into the sewer drop ; they further saw the naphtha splashing from the car and falling on the ground and railroad tracks as the car was being moved in the direction of the switch light. Possessed of a knowledge of these facts and knowing generally the highly combustible character of naphtha, the defendant's employees in removing the car, under the circumstances, must have foreseen the fact that if the naphtha was once lighted the fire would be uncontrollable and would naturally follow the naphtha in its course and so far as it flowed. Nothing could be more reasonable or probable, and hence to be anticipated by the defendant's servants who were bound to foresee the ordinary and natural consequences of their conduct.

The learned judge in the opinion directing judgment to be entered on the verdict says : " We have witness after witness

testifying to a series of underground explosions commencing near the upper end of the sewer, just after the burning naphtha ran in, continuing down its course, and culminating in the heavy explosion at the mouth." Under this testimony the jury could, and doubtless did, find that a series of explosions took place in the sewer, continuous and unbroken from the time the burning naphtha entered the sewer until the final explosion which caused the plaintiff's injuries. There was therefore no break in the chain of successive events from the time of the commission of the negligent act until it culminated in the plaintiff's injuries. The fire from the switch light igniting the flowing naphtha was the primary and efficient cause of the series of explosions. It may be true, that the water carried the naphtha through the sewer, but no explosion would have occurred in the absence of the fire. The water itself, or in connection with the naphtha, was not a self-operating cause of the plaintiff's injuries. If it be conceded to have been the means by which the naphtha and fire were carried to the mouth of the sewer, yet it cannot, in any true sense, be considered as a cause, intermediate and disconnected from the primary fault and operating of itself to produce the injurious results. Such is the character of an intervening cause which imposes liability and relieves the primary wrongdoer. There is no evidence that discloses any efficient intermediate cause from the time of the ignition of the naphtha until the final explosion which occurred at the lower end of the sewer. Had the first explosion resulted in the injury to the plaintiff we hardly think it would be seriously contended that there was no liability for the negligent act in firing the naphtha. The same cause produced the last explosion that produced the first and the only difference between them is " time and distance." The wrongful act and its injurious effects were connected by an unbroken and continuous succession of events which made the consequence the immediate and natural result of the act unaffected by any efficient intermediate cause.

We are at a loss to understand how the appellant can successfully support its position that the court and not the jury should have determined under the evidence in this case the question whether the negligent act of the defendant company was the proximate cause of the plaintiff's injuries ; or see

wherein the appellant would obtain any advantage if its contention should be sustained. It is most strenuously insisted here that the gas at the mouth of the sewer was ignited by fire in the vicinity of the explosion and was not ignited by fire carried from the freight yard through the sewer. The court instructed the jury if they found such to be the fact that the verdict should be for the defendant. The learned counsel for the appellant advanced many reasons in support of their proposition while the counsel for the appellee were equally insistent that the explosion was caused by fire carried from the yard to the mouth of the sewer. Who should determine the fact, the court or the jury? We think, under our judicial system, the reply is obvious, and that the question can admit of but one answer. Its solution requires the determination of a controverted fact from the evidence in the case and that is unquestionably the function of a jury. Had the jury found for the appellant on this question, the verdict must have been against the plaintiff under the charge of the court. Again: Did the naphtha when released from the car flow to the catch basin and through the sewer to its mouth? Did sufficient time elapse from the ignition of the naphtha until the final explosion occurred to permit the fire being carried through, and to, the mouth of the sewer? Did the jury believe the witnesses, who the court says so testified, and find as a fact that there was a series of explosions in the sewer immediately prior to the explosion that injured the plaintiff? It would be necessary to determine these and other questions in ascertaining whether the fire started in the freight yard caused the explosion at the mouth of the sewer. It was also one of the controlling questions in the case, conceding the gas at the mouth of the sewer to have been ignited by the fire carried from the yard, whether any efficient or self-operating cause intervened to produce or contribute to the final explosion which resulted in the plaintiff's injury. The appellant affirmed, and the appellee denied, the proposition.

If the facts of a case are in dispute, the question of remote or proximate cause must go to a jury; if, however, the facts are undisputed and the inferences to be drawn from them are plain and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law:

Pennsylvania Railroad Company v. Hope, supra; Haverly v. Railroad Company, supra; Potter v. Natural Gas Company, 183 Pa. 575; West Mahanoy Township v. Watson, 116 Pa. 344. In this last case GORDON, J., speaking for the court, says: "It is also urged that the question of remote or proximate cause was for the jury and was properly submitted. This would be so, were there any dispute about the facts, but where, as in this case, they are nor disputed, the court should determine the question as a matter of law." In the same case when previously in this court (112 Pa. 574), it was said: "It is undoubtedly true, as a general proposition, that the question of proximate cause is for the jury, yet it has been repeatedly held that where there are no disputed facts the court must determine it."

In Webster v. Monongahela River Consolidated Coal & Coke Company, 201 Pa. 278, cited by counsel, the case was, against the objection of the defendant company, submitted to the jury who, under the evidence, found for the plaintiff. We held that there was sufficient evidence to submit to the jury on the question of proximate cause. What was there said as to the negligent act being the proximate cause of the plaintiff's injuries was in support of the position that the facts disclosed by the evidence were sufficient to warrant the jury in finding in his favor, and not a determination of the fact itself by this court.

We are clear that there was ample evidence in this case to warrant the jury in finding that the explosion resulting in the plaintiff's injuries was caused by the gas coming in contact with the fire carried through the sewer from the freight yard, and that the negligent act of the defendant's servants in causing the naphtha to be ignited was the proximate cause of the injurious consequences to the plaintiff. Whether, therefore, that question was submitted to the court or to the jury, the finding of either tribunal must be against the defendant company.

After carefully considering the questions raised on this record we have discovered no reversible error in the trial of the cause and the judgment is, therefore, affirmed.