# Minnich *v.* Easton Transit Co., Appellant.

*Negligence—Street railways—Automobiles—Collision—Gratui-
tous guest in automobile—Known danger—Testing danger—Con-
tributory negligence—Cross-examination—Confession of fault.*

1. Where dangers, which are either reasonably manifest or
known to an invited guest, confront the driver of a vehicle, and the
guest has an adequate and proper opportunity to control or in-
fluence the situation for safety, if he sits by without warning or
protest and permits himself to be driven carelessly to his injury,
this is negligence which will bar recovery.

2. Although a guest is not required to exercise the same degree
of care and watchfulness as the driver, and the carelessness of the
latter is not imputed to the former, yet a passenger must bear
the consequences of his own negligence, when he joins in testing
a danger; but the extent to which one, in the position of a guest,
should appreciate an impending peril, and act in relation thereto,
depends upon the facts peculiar to each case; unless these are
manifest and the inferences to be drawn therefrom clear beyond
peradventure, the issues involved must be submitted to the jury
for determination.   Moreover, the authorities recognize the fact
that, in measuring the adequacy of the opportunity for control,
there are occasions when any pronounced effort in that direction
might do more harm than good.

3. In an action by an invited guest in an automobile against a
street railway company to recover damages for personal injuries
sustained in a collision at a crossing, the case is for the jury where
the evidence tends to show plaintiff was seated at the right of the

driver on the front seat of the automobile at the time of the accident; both plaintiff and the driver were well acquainted with the general character of the crossing, the location of the track and the trolley time schedule, and knew the near side of the street was the designated and usual stopping place; the automobile was proceeding south on a north and south street which crosses at right angles an east and west street on which was a single track railway used for operating cars in both directions; the latter street was 69 feet between house lines, and the first rail of the tracks was 27 feet 4 inches from the north house line; the automobile was proceeding at a speed of from 10 to 12 miles an hour on the right of the middle of the street, six feet from the west curb line; the speed was not appreciably checked as the crossing was approached, and, due to the buildings on both highways, no extended view could be had along the east and west street, in either direction, before the house line was reached; the driver gave frequent warnings by sounding a "good loud" electric horn and, at the first available place, looked east and then west; 37 feet north of the house line on the east and west street, at a point six feet from the west curb of the other street it was possible to see 88 feet to the west, owing to the first story of the corner building being cut at an angle, and, at the house line, a view of two or three blocks could be had in that direction; the trolley car approached from the west at a rate of 25 miles an hour giving no warning; the driver of the automobile either could not or did not control his machine so as to bring it to a stop before reaching the track; in an effort to prevent a collision, the driver swung sharply to the left, and the motorman applied the airbrake but the two vehicles crashed together, the "left front point" of the car striking the automobile a glancing blow; as the automobile drew near the crossing, plaintiff looked west, saw the car, at the first possible moment,—when seated in the automobile she was about 30 feet, and the car at least seventy feet, from the place of collision; she at once exclaimed "Oh, the car," and that was all she did to avoid the accident.

4. In such case, plaintiff testified on cross-examination that she knew a trolley car was "about due at the time"; defendant's attorney then said, "But you were willing to take a chance with him in going across without stopping or slowing up to see if there was a car coming," adding the query, "Weren't you?" to which she answered, "Yes, sir." *Held,* that, under the circumstances of this case, the court could not say as a matter of law that plaintiff's testimony amounted to a confession that she willingly joined the driver in testing a known danger; that was for the jury to decide.

5. Plaintiff was not obliged to anticipate that she was taking a chance on a trolley car advancing at the negligent rate of 25 miles an hour, particularly when the near side of the street was the designated and usual stopping place.

Hardie v. Barrett, 257 Pa. 42, explained.

Argued March 8, 1920. Appeal, No. 106, Jan. T., 1920, by defendant, from judgment of C. P. Northampton Co., June T., 1917, No. 2, on verdict for plaintiff in case of Margaret B. Minnich v. Easton Transit Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before McKEEN, J.

Verdict and judgment for plaintiff for $4,000. Defendant appealed.

*Errors assigned* were (1) refusal to direct verdict for defendant, and (2) in overruling defendant's motion for judgment n. o. v.

*Robert A. Stotz,* for appellant.—If a danger is as open, obvious and well-known to the passenger as it is to the driver, and the passenger, without protests, permits herself to be driven into such patent danger and joins the driver in taking a chance and testing the danger, plaintiff, although only a gratuitous passenger, cannot recover: Crescent Twp. v. Anderson, 114 Pa. 643; Dean v. Penna. R. R., 129 Pa. 514; Winner v. Oakland Twp., 158 Pa. 405; Dryden v. Pa. R. R., 211 Pa. 620, and Kunkle v. Lancaster County, 219 Pa. 52.

*C. P. Maxwell,* with him *F. P. McCluskey,* for appellee.—The case was for the jury: Vocca v. Pa. R. R., 259 Pa. 42; Azinger v. Pa. R. R., 262 Pa. 242; Nicholson v. Pittsburgh Rys., 58 Pa. Superior Ct. 106.

OPINION BY MR. JUSTICE MOSCHZISKER, April 19, 1920:

On Sunday, April 9, 1916, a little before noon, at a point about three city blocks from the place where the collision giving rise to this case occurred, Jerome Garr invited plaintiff, Margaret B. Minnich, into an automobile, which he owned and was at the time driving upon the streets of Easton, Pa.; she accepted and took the right-hand front seat as a gratuitous guest.

The motor proceeded south along Twelfth street toward Ferry street, which crosses the former highway at right angles; on Ferry street there is a single track line of defendant's trolley road, on which suburban cars are operated in both directions, according to a regular hourly schedule,—eastbound cars being due at Twelfth street about five minutes before the hour and westbound five minutes after the hour. Ferry street is 69 feet 2 inches wide between house lines, and the first rail of the trolley tracks is 27 feet 4 inches from the north house line. Both Garr and plaintiff were well acquainted with the general character of the crossing, the location of the track and the trolley time schedule.

The automobile was running at a speed of ten to twelve miles an hour, on the right of the middle of the street, six feet from the west curb line; the speed was not appreciably checked as the cross thoroughfare was approached, and, due to the construction of the buildings on both highways, no extended view could be had along Ferry street in either direction, before the house line was reached. The driver, however, gave warning by frequently sounding a "good loud" electric horn; and, at the first available place, looked east, then west.

Thirty-seven feet north of the Ferry street house line, at a point six feet from the west curb of Twelfth street, it is possible for one to see 88½ feet to the west along Ferry street, owing to the first story of the corner building being cut at an angle, and, at the house line, a view of two or three blocks can be had in that direction.

Defendant's car, approaching from the west, was nearing Twelfth street, at 25 miles an hour, but, in all probability, because of the rate of speed, neither the driver of the machine nor the motorman of the car saw the other in time to avoid a collision; the latter gave no warning whatever, and the former either could not or did not so control his machine as to bring it to a stop before reaching the track. In an effort to prevent a collision, Garr swung sharply to the left, and the motorman applied the airbrake; but the two vehicles crashed together, the "left front point" of the car striking the automobile a glancing blow.

As they were drawing near the intersection of the streets, Miss Minnich, who was then "looking west for the car," saw it at the first possible moment—when, seated in the automobile, she was about 30 feet, and the car at least 70 feet, from the place of collision; plaintiff at once made an outcry, exclaiming "Oh, the car!" and that was all she did to avoid the accident.

The automobile was not seriously damaged, but Garr's passenger suffered personal injuries; she brought suit against defendant and the case was submitted to the jury in a manner which is not complained of. Plaintiff obtained a verdict, upon which judgment was entered, a motion for judgment n. o. v. was denied, and this appeal followed.

When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery. Although a guest is not required to exercise the same degree of care and watchfulness as the driver, and the carelessness of the latter is not imputed to the former, yet a passenger must bear the consequences of his own negligence, when he joins in testing a danger; but the extent to which one, in the

position of a guest, should appreciate an impending peril, and act in relation thereto, depends upon the facts peculiar to each case; unless these are manifest and the inferences to be drawn therefrom clear beyond peradventure, the issues involved must be submitted to the jury for determination. Moreover, the authorities recognize the fact that, in measuring the adequacy of the opportunity for control, there are occasions when any pronounced effort in that direction might do more harm than good.

Cases on the governing principles just stated are cited in Hardie v. Barrett, 257 Pa. 42, 46-7; but, since the writer of that opinion occupies the same position here, he takes the opportunity to say that, while the rule there laid down is appropriately put for purposes of the case then under consideration, it is somewhat too narrow and limited for a guiding statement of general principles. We refer to the following additional authorities: Proctor v. Lehigh Valley Transit Co., 235 Pa. 373; Sisson v. Phila., 248 Pa. 140; McLaughlin v. Pittsburgh Rys., 252 Pa. 32; Lancaster v. Reese, 260 Pa. 390; Laudenberger v. Easton Transit Co., 261 Pa. 288; Azinger v. Pa. R. R., 262 Pa. 242; Martin v. Pa. R. R., 265 Pa. 282.

While not so deciding, we shall, for present purposes, assume Garr's contributory negligence; but it by no means follows plaintiff can be held, as a matter of law, to have joined therein, or that she in any way contributed to the accident which caused her injuries. On the evidence, the court below very properly submitted these issues to the jury, and they were found against defendant; but appellant contends plaintiff confessed she willingly joined the driver of the automobile in testing a known danger, which, in itself, should put her out of court. Let us see how far this is true.

On cross-examination, Miss Minnich testified she knew a trolley car was "about due at that time"; defendant's attorney then said, "But you were willing to take a chance with him in going across there without stop-

ping or slowing up to see if there was a car coming," adding the query, "Weren't you?" to which she answered, "Yes, sir." This incident in the examination was called to the attention of the jurors by the trial judge, who told them to consider it. In so doing, however, they, no doubt, very properly took into consideration the fact that the words of plaintiff's so-called confession of fault were really those of her cross-examiner, and that Garr, who was driving at a moderate speed, not only had his machine under apparent control, but was indicating a sense of care and responsibility by sounding his horn, while Miss Minnich was also keeping a lookout for danger; furthermore, the jurors had a right to regard the fact that the intersection in question is not peculiarly disadvantageous, so far as opportunities for view are concerned, nor, like a railroad crossing, inherently perilous. Plaintiff was not obliged to anticipate she was taking a chance on a trolley car advancing upon her without warning, at the negligent rate of 25 miles an hour (Simon v. Lit Bros., 264 Pa. 121), particularly when the near side of the street was a designated and usual stopping place; we cannot say, as a matter of law, she meant to suggest a willingness so to do—that was for the jury to decide. When all the elements present are given due weight, it is in no way apparent that plaintiff in any real sense joined the driver in testing a danger, or that, on cross-examination, she expressed a willingness to take any other or greater chance than every automobile passenger must take when traveling upon built-up city streets, in approaching a trolley line.

The assignments of error complain only because defendant was not given binding instructions in its favor or granted judgment n. o. v.; they are overruled and the judgment for plaintiff is affirmed.