Gonzalez et al. *v.* Philadelphia Rapid Transit Company et al., Appellant.

352

Argued October 15, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Warwick Potter Scott,* and with him *John J. K. Caskie,* for appellant.—The act of defendant's motor-

man was not the proximate cause of the injury: Wood v. Pennsylvania Railroad Company, 177 Pa. 306; Rugart v. Keebler-Weyl Baking Co. 277 Pa. 408; Kosson v. West Penn Power Co., 293 Pa. 131; Gaupin et al. v. Murphy, 295 Pa. 214.

*Peter P. Zion*, for appellees.—Defendant's agent was negligent, and his negligence was the proximate cause of the accident: American Railway Exp. Co. v Crane, 90 Pa. Superior Ct. 422; Lorah v. Rinehart, 243 Pa. 231; McMahon v. Reading Transit & L. Co., 280 Pa. 199; Gadol v. Dessen and Philadelphia Rapid Transit Company, 92 Pa. Superior Ct. 386; Caplan et ux. v. Philadelphia Rapid Transit Co., 92 Pa. Superior Ct. 251.

OPINION BY TREXLER, J., December 12, 1929:

These two suits of trespass against the defendants, Joseph C. Welsh and the Philadelphia Rapid Transit Company were instituted by the plaintiffs, a father and his minor son, and were tried together. The plaintiffs' counsel, selecting for present purposes, as he had a right to do, the testimony most favorable to the plaintiffs, has presented the following statement of facts: "The father was the owner of a motorcycle with a side car attached. On May 3, 1927, at the end of their day's work the son was operating the motorcycle and the father was riding in the side car. They drove westward on the north side of Allegheny Avenue, Philadelphia, Pa. At Thirteenth Street they stopped their motorcycle with a trolley car, west bound on Allegheny Avenue, then, moved with the trolley car westward about three feet to the right of the trolley car. It was a clear day. The streets were dry. When the trolley car reached the intersection of Park Avenue and Allegheny Avenue (Park Avenue running north and south) the right front door attached to the trolley car belong-

ing to the appellant defendant suddenly flew off. At the time the door flew out the motorcycle was then about three feet to the right of the trolley car, about midway between the front and rear doors. The door flying out struck the motorcycle proceeding westwardly, and its occupants. The motorcycle was thrown into the air and the occupants were thrown into the air, landing in the street on Allegheny Avenue west of Park Avenue. This caused the injuries both to the property and persons of the plaintiffs. The explanation of the cause of the falling out of the door was that a three ton coal truck operated by the other defendant, Welsh Bros., had been proceeding eastwardly along the south side of Allegheny Avenue. This truck, when it came to Park Avenue, came to a full stop. A trolley car going eastwardly on Allegheny Avenue passed the coal truck when the trolley car going east had cleared the coal truck, the coal truck started to make a left hand turn on Allegheny Avenue into Park Avenue. The coal truck was traveling in low gear, going at a rate not exceeding five miles an hour. When the coal truck reached the east bound tracks, the trolley car going west (from which the door later flew off) was then at Thirteenth Street. When the truck entered the first rail of the west bound tracks, the trolley car was then one hundred feet away. The driver of the coal truck stating that he felt perfectly safe in proceeding, kept moving across the tracks and when the front part of his truck was practically at the northwest curb of Park Avenue and had cleared all of the west bound tracks with exception of a small part of the rear of his truck, the trolley car crashed into the right rear wheel of the truck, throwing the truck upon the northwest corner and pavement of Park and Allegheny Avenues against a pole. After the trolley car struck the truck it proceeded for a distance of one hundred feet before it came to a stop.''

The first assignment of error is to the trial judge allowing counsel for plaintiffs to ask, what counsel for defendants calls, a leading question of defendant Welsh's driver, Percy Moore, the answer suggested by the said question being, it is claimed, directly contrary to former testimony of the same witness. In response to the question asked the witness what he did and what the trolley car did when he was making the turn to cross Allegheny Avenue and enter Park Avenue, he answered, "The P. R. T. trolley car was in front of me as it was coming from Broad Street. So when I got to Thirteenth Street—I mean Park Avenue—I stopped my machine and looked back, and I didn't see anything in my way; then I went ahead across in low gear. I thought I could make it; but by that time, you see, this car got to the crossing. It was coming too fast, so it didn't slow up, and it crashed right into me." Part of the answer referring to the speed of the car was stricken out by the court. This was followed by the question, "Mr. Moore, before you got to the first rail of the west bound trolley tracks, how far was the trolley car from you?" This was objected to, defendants' counsel stating, "He has told us everything." The witness then testified that before he went on the rail on which the trolley car which struck him was traveling, the car was just about one hundred feet away. We see no error in the admission of this testimony and reading the answer which defendants' counsel insists was to end the witness' testimony, it shows that the thought of the witness is not clearly expressed. When he said he went across in low gear and thought he could make it, but by that time the car that struck him got to the crossing, it is not clear as to whether he referred in the phrase "by that time" to the moment when he began to turn or to a point when the accident occurred. The subsequent answer clearly indicates that it would have been wrong to hold the witness to the

above statement. Moreover, the question was not leading. If it had indicated what the answer was to be, it might have been open to that objection, but it was merely directing the witness to the subject of the inquiry. The answer was very important and in our opinion, saved the plaintiff's case, against the trolley company, for if the truck driver had attempted to cross when the trolley car was but fifteen feet away, an entirely different situation would be presented.

The only other assignment relates to the refusal of the court to enter judgment in favor of the defendants. We have here a man crossing the street with a truck and starting at a slow gait. When he was entering the eastbound track, saw a trolley car one hundred feet away and, of course, was in sight of the motorman of the car. When he reached the curb line and only the rear of his truck was on the track, the trolley car struck it. Certainly if the motorman had been attentive, he could have prevented the accident. If his car was going so fast that he could not stop it after he saw the truck, he was negligent. It appears that after the truck had been struck, the trolley car proceeded a distance of ninety to a hundred feet before it came to a stop. If the motorman was coming at a slow rate of speed, there is no reason why he should have struck the truck as he would have had his car under control and could have stopped in time to avoid the accident. As stated in either view of the case, negligence of the motorman could be found by the jury and it was clearly their province to decide the matter.

The appellant argues that there can be no recovery in these cases for the reason that the striking of the truck by the trolley car was not the proximate cause of the injury. He places reliance upon the often referred to case of Wood v. Penna. R. R. Co., 177 Pa. 306. In that case a train had struck a woman and her dead body was thrown a distance of fifty feet and

struck the plaintiff upon the leg. It was held that the injury to the plaintiff was not the natural and probable consequence of standing fifty feet from a crossing to the one side of a railroad when a train is approaching, either with or without warning. The present case presents an entirely different situation. An accident occurring in a public street due to the negligence of a street car motorman or a driver of an automobile is likely in the ordinary course of events to inflict damage, not only to the immediate participants, but to objects and persons in the vicinity. Such consequences are not unusual and the negligence of the tort feasor is the proximate cause of such injuries when the facts constitute a continuous succession of events so linked together that they become a natural whole. It is only when the chain of events is so broken that they become independent and the final result cannot be said to be the natural and probable consequence of the primary cause, no liability for the result attaches: Gudfelder v. Railway Co., 207 Pa. 629. There are a large number of cases in which the subject is discussed. We will refer to a few which are illustrative of the matter.

In Boggs v. Jewell Tea Co., 266 Pa. 428, an ambulance was proceeding along the side of an avenue. A horse and wagon approached in front of the ambulance. The driver of the latter swerved to the south to avoid a collision and the horse turned suddenly in the opposite direction. The defendant jumped forward to avoid the horse and was killed by the ambulance and the owner of the horse was compelled to respond in damages. It was held that if the negligence of the chauffeur of the ambulance concurred with that of defendant's driver, it would not be a defense against the owner of the wagon because they were concurrent wrongdoers.

In Wheelock v. Erie R. R. Co., 61 Pa. Superior Ct.

145, the driver of plaintiff's team approached a railroad crossing and a loaded wagon on the same road approached the crossing in the opposite direction and stopped about one hundred feet from the crossing. The loaded team was struck by the defendant's train negligently and part of its load was thrown against the plaintiff's horse, breaking its leg; recovery was allowed.

In Mellon v. Lehigh Valley R. R. Co., 282 Pa. 39, a train struck a taxicab at a crossing, hurled it against a signal post and the signal post fell and injured a pedestrian, recovery against the company was allowed. There are many other cases to the same effect.

The judgments are affirmed; the prothonotary will enter the order in each case.