## Good *v.* Pittsburgh, Appellant.

256

Argued March 15, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Thomas E. Barton,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, and *James G. Legnard,* Assistant City Solicitor, for appellant.

*E. V. Buckley,* with him *Malcolm Hay* and *Mercer & Buckley,* for appellees.

OPINION BY MR. JUSTICE JONES, May 23, 1955:

The plaintiffs are the owners by the entireties of a dwelling at 1522 Lowrie Street, Pittsburgh, which they were occupying as a residence in February, 1948, when the house was partially destroyed by a gas explosion in the cellar. Each of them also suffered serious personal injury. They instituted the instant action in trespass against the City of Pittsburgh to recover damages for their personal injuries and property loss, alleging that the explosion, which caused the damage, was due to negligence of the City. The City impleaded two additional defendants as to whom compulsory nonsuits were entered at trial and the case went to the jury against the City alone. The trial resulted in a disagreement of the jury. After the City's motion for judgment on the whole record was denied, the case came on for retrial at which the jury returned a verdict for the defendant generally. The court en banc, being of the opinion that the question of the plaintiffs' contributory negligence had erroneously been submitted to the jury, granted the plaintiffs' motion for a new trial and, from that order, the City took this appeal.

The appellant's contention is that the matter of the plaintiffs' contributory negligence was properly left to the jury and that the action of the court en banc, based on the opposite view, was a mistake of law remediable by this court on review.

At the retrial, the plaintiffs introduced evidence which established the following set of circumstances.

Lowrie Street in Pittsburgh is a wide, heavily travelled thoroughfare, paved with Belgian blocks, and accommodates within its cartway a double set of street car tracks. A main gas line runs longitudinally under the surface of the street between the tracks. There was connected to the main gas line, opposite the plaintiffs' property, a feeder or service line which lay three and one-half feet below the surface of the street and ran to the plaintiffs' house which it entered through the front cellar wall. The earth surrounding the feeder line was firmly packed and the cellar wall was tight around the pipe. Immediately inside the wall there was fitted to the feeder line, in an upright position, a right-angle elbow from the top of which a gas line was run to the cellar ceiling and, thence, horizontally along the ceiling. As the learned trial judge correctly related the facts in his opinion for the court en banc,— "For about a year before the explosion, and during intermittent periods for several years before that, there was a hole in the surface of Lowrie Street between the two sets of car tracks in front of plaintiffs' house. It was about as wide as the 'dummy' [the space between the tracks], several feet long and as deep as eight inches at one point. Its contour and dimensions were such that trucks were violently jolted when their wheels traversed the hole. The contact of wheels and hole caused vibrations in plaintiffs' house. These could be felt by the occupants; at times the electric lights 'blinked', windows rattled and the victrola needle 'jumped the groove'. . . . Vibrations caused by truck wheels and the hole were carried by the firm earth beneath the street surface causing vibratory stress upon the 'elbow' in the service line just inside plaintiffs' cellar wall. This long continued stress caused a 'metal fatigue crack' in the 'elbow'. Gas escaped, through this crack, accumulated in the cellar and caused the ex-

plosion." Although the plaintiffs had averred in their complaint that they had notified the City of the unusual nature and extent of the vibrations, they offered no evidence whatsoever at trial to support the averment.

The trial court instructed the jury, inter alia, that the City, even if it had negligently failed to repair the street, was not negligent as to the plaintiffs in respect of their property, and therefore not liable to them, unless the resultant harm was such that it could or should have reasonably been foreseen by the City. The court then observed to the jury, "I don't see any evidence in this case to warrant a finding that the plaintiffs were contributorily negligent. . . . on the evidence in this case you could not make a finding to support the conclusion that the plaintiffs were contributorily negligent." However, at the conclusion of the charge, counsel for the City requested the court to instruct the jury with respect to the matter of the plaintiffs' contributory negligence. To this, the court acceded and thereupon charged the jury that the plaintiffs were aware of the unusual vibrations for some five years prior to the explosion and that, if the crack in the elbow of the gas line inside the cellar resulted from the transmittal of vibrations caused by vehicles hitting the hole in the street, it was for the jury to say whether the plaintiffs "used the care of a person of ordinary prudence with reference to the risk of damaging this pipe and causing a gas explosion due to those vibrations. If you feel that they did not use the care of a person of ordinary prudence to protect themselves against injury, then you could conclude that they were guilty of contributory negligence. If they are guilty of contributory negligence, then they could not recover in this case whether the City was negligent or not."

In awarding the plaintiffs a new trial, the court en banc stated in its opinion that "The charge as to contributory negligence, however, was in error. Evidence binding on plaintiffs revealed that they had knowledge of the vibrations caused by the hole and traffic for a number of years. In effect, the charge permitted the jury to find contributory negligence from this knowledge and the explosion. The decisive matter was whether plaintiffs, with knowledge of the vibrations, acted as persons of ordinary prudence would have acted to protect themselves from the risk involved. The burden was upon defendant to show what this conduct was, plaintiffs' testimony not having disclosed it. So far as the testimony goes, plaintiffs may have taken all the precautions that the man of ordinary prudence would have taken. The issue of contributory negligence should not have been submitted at all."

The plaintiff in a negligence action, of course, has the burden of establishing by a preponderance of the evidence the fault of the defendant as the proximate cause of the injury in suit. On the other hand, the burden of proving the plaintiff guilty of contributory negligence falls squarely on the defendant. But, while the plaintiff has no duty to show affirmatively his freedom from fault, still he may not recover if the evidence in his own case convicts him of contributory negligence. As already indicated, the court en banc recognized that evidence binding on the plaintiffs revealed that for several years prior to the explosion they had knowledge of the nature and intensity of the vibrations and, further, that there was no evidence whatever to show whether the plaintiffs had or had not taken any precautions to insure their own safety. So far as the evidence discloses, the plaintiffs, with knowledge of the character of the vibrations, did nothing to guard against possible injury and loss. The real issue,

then, is whether the jury should have been permitted to consider whether the plaintiffs' failure to take proper action with respect to the alleged vibrations constituted contributory negligence.

As the verdict for the defendant could have resulted, under the instruction of the trial judge, from the jury's finding the plaintiffs guilty of contributory negligence, we shall for present purposes assume that the jury could have reasonably concluded that the explosion in the plaintiffs' house from the gas leakage in the cellar was a consequence within the foreseeable risk created by the City's long-continued neglect of the hole in the middle of Lowrie Street. If that were not so, then the case should not have been submitted to the jury at all since the plaintiffs would have failed to prove the City guilty of causative negligence. But, recurring to the question of contributory negligence, awareness of the possibility of harm inside the plaintiffs' house from the vibrations due to the hole in Lowrie Street is as imputable to the plaintiffs as to the City. Indeed, the plaintiffs were, if anything, in a much better position to appraise the possibility of consequent harm from the vibrations than was the City. The City was, of course, chargeable with constructive knowledge of the existence of the hole in Lowrie Street. But, the plaintiffs, on the other hand, had actual knowledge of the unusual nature and intensity of the vibrations caused by vehicles striking the hole in Lowrie Street. Yet, despite the manifestations inside the house, from the outside jolting, to which the plaintiffs testified, they stood idly by for at least a year prior to the explosion without notifying the City of the condition known to them.

As §463 of the Restatement, Torts, defines it, "Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which

he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant in bringing about the plaintiff's harm." See, also, *Kovalish v. Smith,* 357 Pa. 219, 222, 53 A. 2d 534. Contributory fault may stem either from a person's careless exposure of himself to danger or, as here, from his failure to exercise reasonable diligence for his own protection: see Restatement, Torts, §466. From the general verdict for the defendant in the instant case, it is not possible to say whether the jury, in denying the plaintiffs recovery, concluded that the injuries were not within the scope of a foreseeable risk or whether the plaintiffs neglected to take the precautions for their own safety which a person of ordinary prudence would have taken. But, in any event, whether the jury's verdict was based on the one reason or the other, the learned trial judge did not err in permitting the jury to pass upon the reasonableness of the plaintiffs' conduct in the circumstances.

On analogous principle, where a passenger in an automobile, who has an opportunity to control or influence the driver's conduct, sits by without protesting the negligent operation of the car and permits himself to be driven to his injury, his negligence may bar a recovery. See *Janeway v. Lafferty Brothers,* 323 Pa. 324, 330-331, 185 A. 827; *Nutt v. Pennsylvania Railroad,* 281 Pa. 372, 376-377, 126 A. 803; and *Minnick v. Easton Transit Co.,* 267 Pa. 200, 204-205, 110 A. 273. Likewise, a plaintiff, who observes a fire burning on land adjoining his and fails to notify the adjoining owner of the threatening condition and makes no attempt to safeguard his own property, may be deemed guilty of contributory negligence as a matter of law *(Hunter v. Pennsylvania Railroad Company (No. 2),* 45 Pa. Superior Ct. 476) and, at least, the question of his contributory negligence is a matter for the

jury to resolve: *Hunter v. Pennsylvania Railroad Company (No. 1)*, 45 Pa. Superior Ct. 468, 475. So, here, the question of the plaintiffs' contributory negligence was for the jury.

There is no merit in the plaintiffs' contention that, inasmuch as the City is charged with constructive notice of the defect in Lowrie Street and had a consequent duty to investigate the situation, it was unnecessary for the plaintiffs to have given the City actual notice of the resultant conditions inside their house. Even assuming that the City could be found guilty of legally causative negligence in the premises, and apart from the obvious distinction between real and imputed knowledge, it was, nevertheless, for the jury to say whether reasonable men in the plaintiffs' position would have communicated to the City the fact of the interior effect, known to them, of the unusual vibrations from the street.

The order granting a new trial is reversed and judgment is here entered on the verdict for the defendant.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On the evening of February 2, 1948, John A. Good, 70 years of age; Rose G. Good, his wife, 67; and their daughter Mildred, 26, were enjoying the comfort and tranquility of their home at 1522 Lowrie Street, Pittsburgh when Mildred, who was ironing clothes, smelled a strange odor of gas. At about the same time her father and mother both detected the same odor and Mr. Good descended into the cellar to investigate. Mildred called the Equitable Gas Company to report the alarming symptom and, while still engaged at the telephone, a blast of explosion tore the instrument from her hand, lifted her from the sofa on which she was sitting, blew her father through a hole in the cellar

wall, and drove her mother halfway through the floor, breaking both her legs. The house was demolished and all its furniture and equipment destroyed or ruined.

Amid the wreckage and debris which was once a home, it was discovered that the devastating explosion had been caused by the leakage of gas in the cellar from a broken elbow pipe which connected the subsidiary conduits in the house with the main fuel line beneath the surface of Lowrie Street. In the bed of this wide and busy thoroughfare, which accommodates two street car tracks, there had existed for many years a large hole estimated to be 6 feet long, 4 feet wide and from 8 to 10 inches deep. Some ten years prior to the accident a large water main had broken under Lowrie Street near the intersection of Lowrie and De-Haven Streets. In repairing this water main the City had dug a hole deep enough for a man to stand in, but in refilling the hole the work was done in such a fashion that a depression resulted which sank deeper as the years passed by. Although occasionally something was done to fill up the hole, the City for one year prior to the explosion of February 2, 1948, had bestowed no attention on this threat to the well-being of the entire neighborhood and the travelling public.

Large contractors' trucks hauling excavated earth, big beer trucks, passenger vehicles of every kind, trailers and all other types of wheeled conveyances that one sees today on the streets of a large city passed over and through this abrupt and deep crater. The heavy wheels hitting the edge of the cavity, falling into its depths and then climbing back to the surface of the street produced blows as forceful as a hammer on an anvil. It was inevitable that such methodic and unceasing agitation would affect the gas line passing beneath this anvil pit. A. C. Ackenheil, Jr., professor

of civil engineering at the University of Pittsburgh, testified upon examination of the affected area: "The pipe had been in there for a number of years and there was enough cementing action from the clay in the soil—it was a sort of a gravelly, sandy clay soil—there was enough cementing action there to bend the pipe to the surrounding soil mass so that it acted as a unit."

Even iron eventually gets tired and so, in time, the metal conveyors of gas under the blows of the constantly moving vehicles of Lowrie Street succumbed to "metal fatigue." R. B. Lincoln, consulting engineer of the highly reputable Pittsburgh Testing Laboratory, with which he had been connected for 19 years, examined and applied tests to the broken elbow which released the explosive gas which destroyed the Good home, and then testified in Court. After a comprehensive summing up of all the factors in the case by plaintiff's counsel, Mr. Lincoln was asked this question: "Based upon those premises and the observance of the hole in the photographs which you have seen, and there being a total absence of anything else in the testimony to indicate any force applied to the elbow before the escaping of the gas from that elbow, will you give us your professional opinion and tell us in your opinion what caused the crack which resulted in the escaping of the gas as shown in Plaintiff's Exhibit Number 53?"

His answer was: "It is my opinion that it was caused by the vibration."

The City defendant called only one witness, Cyril Wells of the Carnegie Institute of Technology. He did not refute Mr. Lincoln's findings but stated that he needed further evidence upon which to base a conclusion. However, he did affirmatively state that it was

possible that the vibrations caused the fracture in the pipe elbow.

In charging the jury, the learned Trial Judge in the Court below excluded from their consideration any question of contributory negligence. However, at the termination of his charge, defendant's counsel urged him to put contributory negligence into the case and, against his better judgment, the Judge did so. It was an unfortunate choice and unquestionably confused the jury which returned a verdict for the defendant. The Trial Judge and the Court en banc acknowledged that an error had been made and in the interests of justice and integrity of the law ordered a new trial. The Majority of this Court has reversed that order of the Court below in an Opinion which, in my judgment, fails to justify its drastic decision.

In the first place, the denial of a new trial has deprived the plaintiffs of a right inherent in every jury trial, namely, full argument to the jury. In view of the Trial Judge's original position that contributory negligence was not involved, plaintiff's attorney, according to a statement in his brief, did not argue that question to the jury. However, when later the Court, at the end of its charge, did put contributory negligence into the case, it was too late for the plaintiffs' attorney to argue that proposition. Thus the jury was allowed to believe that plaintiffs' counsel must have admitted that his clients had not acted as reasonably prudent persons since he did not attempt to deny the charge of contributory negligence.

During his charge, the Trial Judge said: "In this case there is no evidence that anyone wrote a letter to the City about this hole. . ." This statement at the time it was made did no harm to the plaintiffs because the Court had excluded contributory negligence. However, when the Court definitely made contributory negli-

gence an issue, the Court's statement that no letter had been written could have been accepted, and probably was accepted, by the jury as evidence of contributory negligence. Especially is this true since defendant's counsel had declared in open Court that: "I certainly think that the fact that they [the plaintiffs] knew of the vibrations and did not do something positive to warn the City, is contributory negligence on their part."

The Majority Opinion passes over in silence this very vital item in the case and merely states that the jury was justified in finding the plaintiffs guilty of contributory negligence because they did not take any positive action in notifying the City of the conditions on Lowrie Street. As I see the facts in this case, there was no necessity or reason for the plaintiffs to notify the City. The law does not require anyone to do a vain and useless thing, and nothing could be more superfluous than the plaintiffs' notifying the City of the continuing miniature earthquake which unceasingly affected the inhabitants as well as the inanimate contents of the houses in the neighborhood of Lowrie and DeHaven Streets. Witnesses at the trial testified that not only did they personally feel the vibrations emanating from the crater, but that throughout the day the walls of the houses shook, windows rattled, picture frames moved, electric lights flickered, dishes clattered, victrola needles jumped their grooves and from time to time automobiles would strike the edges of the depression with such force that hub caps would fly off and roll to the sidewalk.

Aside from constructive notice which the City cannot possibly escape, it was inevitable that policemen, firemen and other city employees must have seen and heard the telltale hole with its ever-continuing tattoo. The City has argued that if the plaintiffs had written

a letter of complaint or protest, matters would have been corrected and the accident would not have occurred. But the threatening situation was written into the surface of the street in characters far more impressive than the words of any letter could be. Each truck passing through the hole communicated its message to City Hall, each automobile which sank into the hole wrote its letter to the street maintenance department of the City.

The Majority concedes that the defendant was chargeable with constructive notice of the defect in Lowrie Street, but not with notice of the resulting vibrations. To assume that the constant battering of massive wheels against the edges of the deep hole could not cause vibrations would be to deny the correlation of matter and force in Nature. As testified to by the scientist Ackenheil, the earth surrounding the pipe had achieved such adhesive density as practically to make it part of the outer wall of the pipe itself. Striking that packed earth agitated the pipe as surely as a plucked harp produces musical tones. But the Majority goes on to say that the plaintiffs were "in a much better position to appraise the possibility of consequent harm from the vibrations than was the City." There is not the slightest intimation in the entire record that the plaintiffs knew or could have known that the vibrations were boring into the walls of the iron pipe. The City employs engineers, scientists and chemists; it maintains laboratories and testing stations. Certainly the City was in a superior position to know and ascertain the scientific effect of vibrations on an iron pipe buried in the ground than two old people living out the declining years of their lives in the seclusion of their home. To charge these people with contributing to the destruction of their home because they stayed home and minded their own affairs is to me

the most illogical and cruelest application of the doctrine of contributory negligence that I have encountered in all my years at the law. The plaintiffs had as much right to assume that they would have the vigilance of the City's servants in protecting them from an invasion by gas resulting from City negligence as that they would be protected from an invasion by burglars and robbers. When a citizen pays taxes for street maintenance he has the right to expect compensatory damages for losses due to injuries resulting from a badly maintained street. If, because of the depression on Lowrie Street, a truck had lost direction and crashed into the plaintiffs' home there would be no doubt of the City's responsibility for the damage done. How does that rule change because the invasion comes through gas in the cellar rather than by a truck in the parlor when it is obvious that the hole in the street is the proximate cause of the eventual smashup?

If a truck had broken the pipe directly beneath the crater and an explosion had followed, no one could question that the City would be liable for the resulting damage. How does the responsibility evaporate merely because the pipe broke at a point several feet and several months distant from the original negligent act, especially when the negligence was a continuing one, each day adding its straw to the camel back of the eventual explosion?

As above indicated, the City argues that had it known of the vibrations, it would have repaired the hole, but the City's responsibility to repair the hole did not depend only on preventing a gas explosion in the plaintiff's house. It owed as well a duty to the travelling public to repair the hole. Once it is admitted, as it must be, that the non-repair of the hole constituted a tortious act, the City was responsible

for all untoward events flowing from that tort. To me it is inconceivable that a tortfeasor can escape responsibility simply because his tortious act takes a slightly different (but thoroughly natural) turn from that which usually follows the commission of such a tort. To carry out the reasoning of the Majority in this case would mean that so long as the tort-feasor can show that the damage done was something unusual, it then must be regarded as unexpected, therefore unforeseeable and consequently not compensable. The law, however, is not so illogical, unreasonable or unfair. Mr. Justice MESTREZAT, one of the great jurists in the history of this Court, stated the law of proximate cause as follows in the case of *Wallace v. Keystone Automobile Company*, 239 Pa. 110, 117: "The proximate cause of an accident imposing liability is the dominant and efficient cause which acts directly or necessarily sets in motion other causes, not created by an independent agency, and which naturally and reasonably results in injury which as a consequence of the primary act, under the circumstances, might and ought to have been anticipated in the nature of things by a man of ordinary intelligence and prudence, although, in advance, *it might have seemed improbable* and the precise form in which the injury actually resulted could not have been foreseen."

Thus, even though it might have seemed improbable that the vibrations could have weakened the gas pipe, this improbability did not save the City from responsibility when it is clear that the vibrations were causing other obvious damage.

Our books are by no means empty of cases where tortfeasors were held liable for injuries and losses which were two and three steps removed from the original tortious act. The case of *Gudfelder v. Railway Co.*, 207 Pa. 629, is interesting and illuminative of this

point. Railroad employees negligently permitted the perforation of a railroad car containing 7,000 gallons of naphtha, most of which ran out on to the ground and found its way to a catch basin. The car, still running naphtha, was now moved on the tracks and past a switch light which ignited the dripping naphtha. The resulting flame followed the course of the naphtha back to the catch basin and from the catch basin into a sewer which terminated at the mouth of a culvert near a bridge on which the plaintiff was standing. An explosion from the naphtha occurred close to this point and the plaintiff was injured. The defendant company argued that the plaintiff's misfortune was too far removed from the negligent act of the railroad to hold it responsible. This Court held to the contrary. Justice MESTREZAT, writing for the Court, said: "We must assume, as the jury has found, that the naphtha was ignited by the negligent act of the defendant's employees in drawing the punctured car near the burning switch light when the naphtha was flowing from it. The natural and inevitable consequence of that act would be apparent to the dullest intellect and must be presumed to have been foreseen by any employee who possessed the requisite intelligence to perform the duties required of him in operating a car containing such a dangerous substance as naptha. . . . Possessed of a knowledge of these facts and knowing generally the highly combustible character of naphtha, the defendant's employees in removing the car, under the circumstances, must have foreseen the fact that if the naphtha was once lighted the fire would be uncontrollable and would naturally follow the naphtha in its course and so far as it flowed. Nothing could be more reasonable or probable, and hence to be anticipated by the defendant's servants who were bound

to foresee the ordinary and natural consequences of their conduct."

Applying the reasoning in the *Gudfelder* case to the case at bar, it can be said that the natural and inevitable consequences of heavy trucks passing over the depression on Lowrie Street would be apparent to the dullest intellect and must be presumed to have been foreseen by the City's employees, agents or servants who possessed the requisite intelligence to perform the duties required in the maintenance of streets. To say, as the Majority says, that the plaintiffs here should have known of the results of the vibrations is not the controlling feature in this case at all. If the City was charged with knowledge of the reasonable and probable consequences resulting from the non-repair of the Lowrie Street hole, it did not matter whether the plaintiff knew or did not know of those possible consequences. A motorman running down a prostrate man on the tracks cannot escape responsibility by saying that the prostrate man did not shout to tell the motorman of his danger.

Going back to the *Gudfelder* case, Justice MESTREZAT said: "Had the first explosion resulted in the injury to the plaintiff we hardly think it would be seriously contended that there was no liability for the negligent act in firing the naphtha. The same cause produced the last explosion that produced the first and the only difference between them is 'time and distance.' "

This confirms what I said earlier in this Dissenting Opinion, namely, that if a truck had broken the pipe beneath the crater and the explosion had immediately followed, it could not be seriously argued that there would not be liability for the resulting damage. The same cause which produced the vibrations resulting in the gas explosion is the same cause which would

have broken the pipe, namely, the depression, the only difference between the two situations being "time and distance."

The case of *Paulscak v. Hoebler*, 330 Pa. 184, 189, is another mirror which reflects, in my opinion, the injustice being done the plaintiffs here. In the *Paulscak* case the defendant placed a large electric signboard and motor on top of a 60-year old building. In time the vibrations from the motors weakened a wall of the building causing it to fall and injuring the plaintiff. Mr. Justice MAXEY, in speaking for this Court which affirmed the verdict returned for the plaintiff, said: "The trial judge correctly instructed the jury that it might find as a fact that the cause of the collapsing of the wall was a vibration which had been going on for a period of a year, that it was slight each minute or hour, but that, in the aggregate, over that long period, it had been loosening and weakening the side of the wall and that it therefore eventually collapsed."

Further: "The verdict of the jury indicates that the inference was drawn that the operation of the additional defendant's equipment on this building caused vibration over a sufficiently long period of time to cause the wall to collapse, which resulted in plaintiff's injuries. The only legal question is whether or not the negligence can be predicated on such a finding. We hold that it can."

The case of *Pittsburgh F. & I. Co. v. Dravo Co.*, 272 Pa. 118, is another one which cannot be ignored in analyzing the principles of law involved in the case before us. There the plaintiff's manufacturing plant was located on the Ohio River some 400 feet below a constructing operation being conducted by the defendant. A broken pipe traversing the river bed released oil which came to the surface. The defendant's

employees negligently dropped a burning stick into the river and the resulting fire was carried over the pool of oil to the plaintiff's wharf, causing its destruction. The Trial Court charged the jury that the defendant was not bound to anticipate the action of the air currents, and, if the fire was so conveyed, this would constitute an intervening agency which would relieve liability. This Court held the instruction to be in error: "This overlooked the fact that the presence of such a condition might have been, or the jury could say 'should have been' observed, and that, in view of the atmospheric conditions, it might have been obvious that the fire would cause the injury which did result. 'No doubt a hurricane or a gale may be such as to be plainly out of the usual course of nature, and therefore to be pronounced by the court as the intervention of a new cause. . . But the ordinary danger of wind helping a fire to spread is one of the things to be naturally anticipated' . . ."

Thus, in the case at bar the ordinary danger that a pipe subjected to continuing vibrations over a period of years would break is "one of the things to be naturally anticipated."

In *Shipley v. Pittsburgh,* 321 Pa. 494, the driver of an automobile, in order to avoid colliding with another car that suddenly stalled in front of it on a bridge, attempted to avoid it by passing around it, but, by some mishap, crossed the center line of the bridge and the left half of the road, mounted a 5 inch curbstone on the bridge, proceeded across a 14-feet sidewalk, hit the railing of the bridge and crashed through to the gully below. There was evidence that the guard rail was defective. This Court held that the defendant City of Pittsburgh was liable. "Municipalities must keep their bridges 'in such condition as to be reasonably safe for public travel.' " Although it could be argued that

the proximate cause of this accident was the stalling of the car on the bridge and that the City could not have foreseen this unusual circumstance, this Court said, quoting Restatement, Torts, §435: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

As I view the case at bar, the flagrant dereliction in duty on the part of the City in failing to repair the hole on Lowrie Street was the proximate cause of the plaintiffs' serious losses and injuries. The cases which I have cited demonstrate that the law when properly applied is not blind to the objective realities of life. The decision of the Majority, as I view it, can only throw consternation into the ranks of precedent and authority, confusing principle and practice until the legal profession is left in a quandary as to what advice to impart to injured citizens seeking their services and intervention in behalf of justice. The rule of law that there is no wrong without a remedy seems to have suffered a serious setback in this case. After a meticulous reading of the 352-page record, I can only conclude that the plaintiffs lost what was their most prized possession, their own home, through some outside fault. Yet the adjudication of the case now not only leaves them without remuneration for their physical injuries and the destruction of their abode, but it even accuses *them* of the fault!

Only a forced reasoning can bring about such a result. For instance, to liken, as the Majority does, the situation of the plaintiffs in their home to that of passengers in an automobile is, in my estimation, an arbitrary and gratuitous comparison which is completely lacking in analogy and commonness of experi-

ence with the facts of the case at bar. The Majority says: "On analogous principle, where a passenger in an automobile, who has an opportunity to control or influence the driver's conduct, sits by without protesting the negligent operation of the car and permits himself to be driven to his injury, his negligence may bar a recovery." *

What is the relevancy of this observation?

The Majority also speaks of the situation where a property owner seeing a fire on his neighbor's land does not attempt to extinguish it. It is not apparent how this illustration of contributory negligence has any bearing on the case at bar. The plaintiff John Good certainly did all he could to prevent the explosion in his house. The record shows that on the night of February 2, 1948, at 10:30 o'clock, as soon as he smelled the odor of gas he immediately descended into the cellar to make an investigation. When he reached the bottom of the stairs he heard a hissing sound and tracked it to the elbow pipe where he felt the escaping gas. What he attempted to do is revealed in his testimony: "Q. What did you do then? After you put your hand out and felt the pressure of the gas coming from that elbow, what did you do? Did you try to do anything to stop it? A. I reached around to get a rag. Q. And what were you going to do with the rag? A. Going to wrap it around the pipe line. Q. Did you succeed in wrapping the rag around it? A. No, sir. Q. What happened, what prevented it? A. It blowed up first. Q. It blowed up first? A. Yes. Q. Where were you when it blew up? A. Right over the top of it."

---

* Incidentally in none of the three cases cited by the Majority in this connection was the plaintiff held guilty of contributory negligence.

What more could John Good have done? It was not until 10:30 p.m. of February 4, 1948, that he learned that there was anything wrong with his gas pipe. Three or four minutes later he was blown through a wall, and his home was a jumble of kindling wood and charred brick. Are his rights, because of those three or four minutes' notice, to be thrown out of the courthouse as he himself was blown through the cellar wall, although the defendant had ten years' time within which to correct the situation which precipitated the tragedy at 1522 Lowrie Street?

In spite of all that the Majority has said I fail to see where there is any law which can justify or rationalize the decision reached, and I accordingly vigorously dissent.