No. 35,503

GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*, v. OLIVER HARDWICK, *Appellee*.

(127 P. 2d 433)

Opinion filed July 11, 1942.

*Ralph M. Hope,* of Atchison, argued the cause, and *W. P. Waggener, O. P. May* and *B. P. Waggener,* all of Atchison, were on the briefs for the appellant.
*Walter B. Patterson,* of Fort Scott, argued the cause for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action in ejectment for the possession of a tract of land claimed by plaintiff as a part of the railroad right of way. A trial by jury resulted in judgment for defendant. Plaintiff has appealed.

The pleadings may be summarized as follows: In the petition, filed October 5, 1939, it is alleged that plaintiff is the duly appointed trustee of the Missouri Pacific Railroad Company and as such is the legal owner and has title to all the real property owned and held by the Missouri Pacific Railroad Company prior to his appointment as such trustee; that as such trustee he "has a legal estate in, and is entitled to the possession of" certain property, which is described, and that defendant unlawfully keeps plaintiff out of pos-

session of the premises. The prayer was for judgment against defendant for the possession of the property and for costs.

The answer admitted plaintiff's capacity as trustee of the railroad company, but specifically denied that as such trustee plaintiff has a legal estate, in, and is entitled to possession of the property described; admitted defendant owns a frame warehouse, but denied that it is located on any property which the plaintiff, as trustee, has a legal estate in, and denied plaintiff is entitled to possession of any real estate upon which defendant's warehouse is located. The answer further alleged that on or about March 10, 1931, the railroad company entered into a written lease with defendant wherein it was agreed that the railroad company would rent to the defendant a certain tract of real property for the purpose of building a warehouse thereon; that the railroad company represented to plaintiff that it was the owner of the real property; that defendant did locate a frame warehouse thereon, and in pursuance thereof the defendant paid unto the railroad company, or its trustee, the sum of $60 as rent, which sum defendant asked to recover from the plaintiff. It was further alleged that in writing the lease a mutual mistake was made in describing the property; that the lease was intended to describe the tract upon which the warehouse was constructed, and should be reformed in that respect. Without waiving other allegations of the answer it was further alleged that defendant had been in the open, actual, notorious, exclusive and adverse possession of the real estate upon which the warehouse was constructed for more than fifteen years. The prayer was that defendant recover his costs and the $60 he had paid under the lease, and in the alternative, if the court should find for plaintiff, defendant be permitted to remove the warehouse. A copy of the lease was attached to the answer.

Plaintiff's reply contained a general demurrer to the answer, also a general denial of matters not specifically admitted; admitted executing the lease to plaintiff March 10, 1931; that there was mutual mistake in the description of the property as contained in the lease, and joined in the request that the lease be reformed in that respect, and admitted that defendant did build the warehouse upon the tract of land described in the petition; alleged that by the terms of the lease defendant was to pay plaintiff as rent for the premises on which the warehouse was located the sum of $12 per year; that after defendant had erected the warehouse thereon he did pay such annual rent for five years, to and including March 10, 1936; that

pursuant to a provision of the lease plaintiff, on June 6, 1939, served written notice on defendant that the lease would terminate in thirty days thereafter for nonpayment of rent. The prayer was that defendant be denied the relief prayed for in his answer and that plaintiff have judgment as prayed for in his petition.

The pertinent portions of the opening statement of defendant's counsel may be summarized as follows: The defendant desired to lease a piece of land from the Missouri Pacific Railroad Company on which to build a warehouse. He contacted the local agent of the railroad company and defendant set stakes where he wanted his warehouse. A little later the agent of the railroad company brought the lease to defendant, which was supposed to describe the land where defendant desired to build his warehouse, but in fact described a tract about 490 feet west. The defendant constructed the warehouse where he wanted it and paid the rent, $12 per year, from 1931 to 1936. In the latter part of 1935 defendant discovered that Bourbon county engineers were out there surveying and setting stakes near this building. He investigated and found the county had given a quitclaim deed to the land where the warehouse was located and some other land to 'one Henry Kerns. Defendant then went to plaintiff's agent and said he would pay the rent if plaintiff showed him to his satisfaction that the company owned the land, and refused to pay further rent. "The whole question of this lawsuit is this, whether or not Mr. Hardwick is on their property or off of their property." That in 1871 a road was laid out, known as the Iola-Humboldt road, and the then owner of the land (H. T. Wilson) conveyed to the county a strip 1,426 feet long and 100 feet wide. The present highway, U. S. 54, runs, generally, in an east-and-west direction, but the old road to which the county got a deed is to the south of the present U. S. 54. About thirteen years later (in 1884) the railroad company procured a deed extending its right of way. The deed to the railroad company started at the center of the track and measured north about 140 feet to the south line of the old Iola-Humboldt road. Defendant's contention is that this strip is about 100 feet in width and that the building sits in the old road and not on the property of the plaintiff.

Plaintiff moved for judgment upon the pleadings and the opening statement of counsel. This motion was overruled.

A written stipulation was filed reciting the mutual mistake in the lease with respect to the description of the property and that it

should be reformed so as to cover the property on which the warehouse is situated.

The evidence pertained to the description in the two deeds in question, the starting points for measurement concerning which there was much uncertainty, and to surveys made at different times. In 1871 H. T. Wilson, then the owner of real property, appears to have made a deed to the county for a strip of land 100 feet wide for the location of a highway, locally known as the Iola-Humboldt road. This extended generally east and west and a short distance north of the railroad. Only a small portion of its width appears to have been used for highway travel. Some years ago the road appears to have been relocated to the north of the strip deeded and is now an improved federal and state highway, No. 54. In 1884 Calvin Huntington, who had succeeded Wilson as the owner of the land, executed a deed to the railroad company for a strip between the center of one of its tracks and the Iola-Humboldt road. This was described as being 140 feet wide, more or less. Whether that was intended to be the south edge of the tract deeded by Wilson to the county for road purposes, or to the traveled portion of the road, is not clear from the evidence. Without reciting this evidence in detail it may be said there is evidence to support the view that the strip deeded by Huntington would be only 100 feet wide if its north line was the south line of the strip Wilson previously had deeded to the county. There is other evidence tending to show that the width of this strip was 140 feet. It seems clear from the evidence there is no part of the strip deeded by Wilson to the county that is now used for highway purposes at or immediately near the location of this warehouse.

The evidence with respect to the lease of the property, construction of the warehouse, and the paying of rent was substantially as shown by the pleadings and the opening statement of defendant's counsel. The trial court held there was no evidence to sustain the claim that defendant had been in the actual, open, notorious and exclusive possession of the property for fifteen years prior to the bringing of this suit and refused to submit that question to the jury. As to that, defendant has not filed a cross-appeal.

At the close of the evidence plaintiff moved to strike from the record all the evidence offered in behalf of defendant. This was overruled. Plaintiff also moved for judgment upon the pleadings, opening statement, and the evidence. This was denied. Plaintiff's

request for certain instructions was refused, and he objected to some instructions. In view of our conclusion on other points it will not be necessary to examine complaints respecting instructions.

Appellant argues that defendant, as a tenant of plaintiff, is estopped to deny plaintiff's title, citing *Pettigrew v. Mills*, 36 Kan. 745, 14 Pac. 170; *Fry v. Boman,* 67 Kan. 531, 73 Pac. 61; *Klingbeil v. Neubauer*, 110 Kan. 253, 203 Pac. 731, and authorities cited therein, 'together with general texts on landlord and tenant to the same effect.

Counsel for appellee say they have no quarrel with plaintiff's general statement that a tenant cannot deny the landlord's title, but point out there are some exceptions to this general rule which are just as effective as the rule itself. One of the exceptions is where a tenant does not go into possession under the lease. (*Ireton v. Ireton*, 59 Kan. 92, 53 Pac. 74.) There is no room for the application of that doctrine here. Plaintiff wanted to build his warehouse on the railroad right of way; went to the agent, together they looked over the ground, and staked it out. The lease was drawn, he constructed the warehouse where he wanted it, which he understood at that time was on the right of way of the railroad company, and which the railroad company was claiming as a part of its right of way; hence, it cannot be said that he did not go into possession of this property under the lease. His allegation that previously he had been in possession of the property was found by the trial court to have so little evidence to support it that it could not be sustained. Appellee cites 18 Am. Jur. 33 to the effect that a lessor having no interest, title, possession, or right of possession, cannot make a valid lease, and the doctrine of estoppel is inapplicable. But this hardly can be the situation here. Plaintiff certainly had an interest and as much possession as railroads normally have of an unfenced right of way. More than that, there is authority to the effect that it is no objection to the estoppel that the landlord had no title at the time the relationship was created. (35 C. J. 1231.) In fact, so long as the title of the landlord is the same as it was when the tenancy was created, and the tenant is not disturbed in his possession, it is immaterial whether the title of the landlord is a valid one. (35 C. J. 1232.) In *Ellsworth v. Eslic*, 91 Kan. 287, 292, 137 Pac. 973, it was said:

"But so long as the landlord's title remains as it was when the tenancy was created, the tenant is not permitted to open the door to confusion and fraud by disputing it. (*Forbes v. Caldwell*, 39 Kan. 14, 17 Pac. 478.)"

Appellee says plaintiff did not plead estoppel. He did plead the facts which constituted estoppel. It is not material that he did not use that word in the pleadings. Moreover, we notice the lease in question, among other provisions, contains the following:

"Lessee agrees: . . . (b) to waive all right to question the validity of this lease or any of the terms or provisions hereof, or the right or power of the carrier to execute and enforce the same, . . . "

Hence, appellee was estopped to question the right of the railroad company to execute this lease by the terms of the lease as well as by the law applicable thereto.

This point was quite clearly brought out in the pleadings and in the opening statement. We think it was error for the court not to sustain plaintiff's motion for judgment made at that time. While other questions argued in the case might be discussed, we find no reason for doing so. Since defendant prayed in the alternative to have the right to remove his building in the event judgment went against him for possession, and since in the brief and oral argument of plaintiff in this court defendant's permission to remove the building is consented to, his right to do so should be embodied in the judgment.

The judgment of the court below is reversed with directions to render judgment for the plaintiff for the possession of the property, with permission for defendant to remove the warehouse. It is so ordered.