Collins, a Minor, Appellant, *v.* The Pennsylvania Rd. Co.. Appellee.

(No. 1948—Decided October 31, 1944.)

*Messrs. Fitzgibbon & Fitzgibbon* and *Mr. Charles B. Holtsberry,* for appellant.

*Messrs. Pomerene & Burns,* for appellee.

Sherick, J.   The principal law question presented in this appeal has to do with the propriety of the trial court's direction of a verdict, at the end of plaintiff's case, in favor of the defendant and entering final judgment thereon.

The action is for damages for personal injury which resulted from defendant's train colliding with an automobile, in which plaintiff, a minor of the age of 16 years, was riding as a guest passenger, at a street crossing in the city of Newark.

It was averred and established by plaintiff's evidence that defendant was negligent in two respects:

First, the crossing was a dangerous one and in bad repair; second, the train was moving in excess of the speed allowed by municipal ordinance. Injury and damage were also pleaded and proved.

Defendant in its answer denied its negligence, admitted the injury, but denied the extent thereof, and averred that plaintiff's injury and damage were caused by the negligence of the driver of the car. The reply denies such new matter as the answer sets forth.

In accordance with the settled rule of this state that, on a motion for a directed verdict, the evidence shall be weighed in the aspect most favorable to him against whom the motion is directed, the facts established are as follows:

Plaintiff was a rather backward farm girl of 15 years and some months of age. She entered her brother-in-law's coupe along with two other children. A girl occupied the right side of the driver's seat. A slight ten-year old boy sat upon her lap. The plaintiff sat between the driver and the boy and girl. The right door window had been broken out and replaced with cardboard in which were three slots filled in with isinglass. Defendant's train hit the car in its rear on the right side.

Plaintiff had three or four times previously ridden in this car in the condition described. She lived in proximity to Main street which led into the city's public square, where she was going. She lived also near the Arch street crossing where the accident happened. She had never been over the Arch street crossing and had no knowledge of it. She had expected her brother-in-law to drive up Main street, which was the usual course. This was a good crossing protected by gates and blinker lights.

It is evidenced that the driver approached the crossing, stopped his car, looked and listened and then drove upon the crossing at about three miles per hour. There were three or four sets of tracks. A house stood

close to the crossing, on the car's right. It is evidenced that the house and certain trees obstructed the view to the right. The tracks at this crossing were elevated on the outside indicating a curve. One could see to the right when on the tracks, some six telephone pole lengths, or 400 to 500 feet. There was a railroad-crossing post at this crossing, but no gates, bells or flasher lights. The driver testified that he did not see the train approaching when he drove upon the tracks, and that he could see and did look when he started across. The train was moving at 40 to 45 miles per hour. The municipal ordinance required a speed of not greater than 25 miles per hour.

Plaintiff said she did not know they were crossing the tracks, and that she had no remembrance of anything that happened between the time of entering the car and the time of recovery of consciousness in the hospital.

This being the state of the facts most favorable to plaintiff, can it be said that it discloses negligence upon her part, precluding, as a matter of law, her recovery? We are told in brief and in oral argument that the trial court's judgment was predicated on the facts that plaintiff had entered this car as a guest knowing that the cardboard cut off her view to the right; that such substance in a car door window was contrary to Section 6307-98(a), General Code, which requires that a door window be of transparent material and forbids a driver from operating a car unless it is so equipped; and that plaintiff made no proof that she looked or attempted to look or exercised any care for her own safety. It is apparent that the trial court must have acted as it did with these matters in mind. It found therefrom not only that plaintiff was guilty of contributory negligence as a matter of law, but that such negligence was the direct and proximate cause of her injury and damage, and also found, in accordance with *Hamden*

*Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246, that reasonable minds could reach no other conclusion from all the plaintiff's evidence.

It is settled in this state that a guest passenger must exercise due care for his or her own safety, that is, such care as a reasonable and prudent person in like circumstance would employ; and this rule applies as well to guests who are minors, relaxed of course to that degree of care which children of like age and capacity would exercise in their behalf in like circumstances. The difficulty is found in establishing a rule as to just how far a guest should go in attempting to exercise due care. Ohio cases support the view that guests are required to look and listen at railroad crossings and of course warn the driver of approaching trains at crossings known to and perceivable by them, and that is as it should be.

Ohio courts entertain two further rules; that of refusing to impute the negligence of the driver to his passenger; and that of joint enterprise; both of which are discussed in the well known case of *Bloom* v. *Leech, Admr.,* 120 Ohio St., 239, 166 N. E., 137. Our Supreme Court has said in *Hocking Valley Ry. Co.* v. *Wykle, Jr., a Minor,* 122 Ohio St., 391, 171 N. E., 860, in stating the rule that a guest must exercise due care for his own safety, that "a guest in an automobile does not assume the responsibilities of the driver." This clause it will be noted prefaces the statement of the rule of due care as to guests.

In view of the boundaries established, *i. e.,* joint enterprise and denial of imputed negligence, there exists that field of due care in which our courts have been hesitant to say just how far a guest passenger should go in directing the operation of a motor vehicle which the Supreme Court of the United States has held to be a dangerous instrumentality. Just as too many

cooks may spoil the broth, so too many drivers may cause disaster.

We think it may be soundly reasoned as a corollary that, if a guest "does not assume the responsibilities of the driver," then the guest is entitled to rely upon the driver's looking, providing the latter exercises due care.

We can readily conceive of situations wherein a guest might fail to exercise due care, examples of which might be in accepting a ride when it is evident that the driver is intoxicated, or it is known to the guest that the car is without brakes or its steering apparatus is defective. But is this such a case? Plaintiff said that she had ridden with her brother-in-law before in this car; that she thought he would go over the Main street crossing; that she knew nothing about the Arch street crossing; and that she did not know they were crossing the railroad when the collision occurred. She was a school girl and a rather backward child, and, for all we know, she had never driven a car. Her driver said he stopped and looked and that he saw no train approaching, and this testimony must be taken as true.

Is this isinglass-slotted cardboard in the right door like a known drunken driver, a lack of brakes or defective steering apparatus? We think not. We seriously doubt that this young girl appreciated the danger of riding in a car with a cardboard substituted for glass in a door window. If she did not appreciate the danger or did not know she was being carried over a railroad crossing there was little or nothing she could do for her own safety.

Surely the guest passenger had a right to rely upon her driver operating the automobile properly and carefully. She was assured that her driver might not purposely or wantonly injure her. She knew that a careful driver will ordinarily exercise due care for his own

safety and in doing so a guest passenger will at the same time be properly cared for. Her driver said he stopped, looked and listened when the same was effective. If this was true, then the driver exercised due care at the crossing and any negligence of the driver in driving his car with a cardboard window could not be imputed to the plaintiff or be the proximate cause of the collision. Was it the cardboard and the guest's failure to look that caused the injury? Or was it the unlawful speed of the train or the bad crossing, conceded by the motion to be true, which caused the injury? We think the evidence presented a jury question upon which reasonable minds might arrive at different conclusions, both as to contributory negligence and proximate cause.

It must be conceded that school children riding in school buses may rely on the driver. Passengers for hire on common carriers must and do rely on their drivers, even if such passengers are required to exercise due care for their own safety. From these truisms it is certain that passengers' reliance upon drivers driving carefully is not a new principle.

In the recent case of *Garcia* v. *American Rd. Co. of Porto Rico*, 127 F. (2d), 433, it was held in the sixth paragraph of the syllabus:

"In Puerto Rico one riding in a vehicle under the control of another is entitled, in the absence of notice to the contrary, to rely upon the skill and prudence of his driver and is under no affirmative duty either to keep a constant lookout ahead or to warn his driver of every possible danger in their path."

The point which we are attempting to advance, seems to have been twice under observation in Massachusetts, first in *Pigeon* v. *Mass. Northeastern St. Ry. Co.*, 230 Mass., 392, 119 N. E., 762. In that case guests testified that they were not relying upon their driver. They were denied recovery upon the theory that their

acts clearly indicated contributory negligence on their part. However, the court proceeded to observe, that "the female plaintiffs were guests of Pigeon and therefore entitled somewhat to rely upon him." The same court, in *Jones* v. *N. Y., N. H. & H. Rd. Co.*, 275 Mass., 139, 175 N. E., 487, wherein a woman who was riding with her sister, the driver, sued to recover damages for injuries sustained in a crossing collision, held that the plaintiff who relied on driver to look out for her was entitled to recover against railroad if the driver exercised due care.

4 Blashfield's Cyclopedia of Automobile Law & Practice (Perm. Ed.), 273, Section 2476, states the following rule which, as we see it, is applicable here:

"A passenger or guest has the right to place reasonable reliance upon the assumption that the driver will discharge his duty of looking and listening, and stopping for that purpose if necessary, before he proceeds to drive the automobile onto a railroad crossing; and a guest who does so rely upon the driver is entitled to recover against the railroad, if the driver does maintain a proper and sufficient lookout and the accident, in which the guest is injured, occurs despite that fact."

One further case, *Loughrey* v. *Penn. Rd. Co.*, 284 Pa., 267, 131 A., 260, is of more than passing interest. Therein a guest sought recovery. In approaching a crossing, the driver acted as if he were going to stop, but instead suddenly shot ahead onto the crossing. The guest in that case was familiar with this cross-over. It was said that if she knew the driver's actual intention, and made no protest she would have been guilty of contributory negligence. In affirming the judgment in plaintiff's favor, the court held that "it is an exception to the rule, that the guest cannot be held guilty of negligence as matter of law because he did nothing," and proceeded to invoke the rule as stated in Blashfield's Cyclopedia, *supra*. That court then repeated

its prior comment made in *Minnich* v. *Easton Transit Co.*, 267 Pa., 200, 110 A., 273, 18 A. L. R., 296. It concisely states the view now held by this court. We quote that part which we subscribe to:

"The extent to which one, in the position of a guest, should appreciate an impending peril, and act in relation thereto, depends upon the facts peculiar to each case; unless these are manifest and the inferences to be drawn therefrom clear beyond peradventure, the issues involved must be submitted to the jury for determination."

For reasons assigned, the judgment is reversed and the cause remanded for submission to a jury.

*Judgment reversed and cause remanded.*

MONTGOMERY, P. J., and PUTNAM, J., concur.